## PIERCE *v.* CREECY, CHIEF OF POLICE OF THE CITY OF ST. LOUIS.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 357.   Argued April 20, 21, 1908.—Decided June 1, 1908.

Whether or not the indictment on which the demand for petitioner's surrender for interstate extradition is based charges him with crime within the requirements of Article IV, § 2, par. 2, of the Federal Constitution, involves the construction of that instrument, and a direct appeal lies to this court from the Circuit Court under § 5 of the Judiciary Act of 1891.

While no person may be lawfully extradited from one State to another under Article IV, § 2, par. 2 of the Federal Constitution unless he has been charged with crime in the latter State, there is no constitutional requirement that there should be anything more than a charge of crime, and an indictment which clearly describes the crime charged is sufficient even though it may possibly be bad as a pleading.

The Federal courts cannot, on *habeas corpus*, inquire into the truth of an allegation presenting mixed questions of law and fact in the indictment on which the demand for petitioner's interstate extradition is based; and *quœre* whether it may inquire whether such indictment was or was not found in good faith.

A Federal court should not, unless plainly required so to do by the Constitution, assume a duty the exercise of which might lead to a miscarriage of justice prejudicial to the interests of a State.

THIS is an appeal directly to this court from a judgment of the Circuit Court upon a writ of *habeas corpus,* remanding the petitioner, now appellant, to the custody of the respondent, now appellee.   The petition for the writ of *habeas corpus* alleges that the petitioner was "imprisoned, detained, confined and restrained of his liberty, at the city of St. Louis, within the district aforesaid, by Edmund P. Creecy, the chief of police of said city of St. Louis, in violation of the laws and Constitution of the United States."   There is no dispute about the facts, which, as they appear in the petition and the return, are as follows.

The Governor of the State of Texas made a requisition upon the Governor of the State of Missouri, which is as follows:

"To the Governor of the State of Missouri:

"Whereas, it appears by the annexed documents, which are hereby certified to be authentic, that H. Clay Pierce stands charged with false swearing, committed in the State of Texas, and information having been received that the said H. Clay Pierce has fled from justice and has taken refuge in Missouri.

"Now, therefore, I, T. M. Campbell, Governor of the State of Texas, have thought proper, in pursuance of the provisions of the Constitution and laws of the United States, to demand the surrender of the said H. Clay Pierce as fugitive from justice, and that he be delivered to G. S. Mathews, who is hereby appointed the agent, on the part of the State of Texas, to receive H. Clay Pierce.

"Given under my hand and seal of the State, affixed at the city of Austin, this 11th day of February, A. D. 1907, and of the independence of the United States of America, the one hundred and thirty-first, and of Texas the seventy-first year.

"T. M. CAMPBELL, *Governor.*"

To this requisition was attached a certified copy of an indictment against the petitioner. The indictment is as follows:

"In the name and by the authority of the State of Texas.

"The grand jurors of Travis County, in said State, duly empaneled, sworn and charged as such at the September term, A. D. 1906, of the District Court of said county, in and for the Fifty-third Judicial District, upon their oaths, in said court, present: That Henry Clay Pierce, in said county and State, on or about the 31st day of May, in the year of our Lord nineteen hundred, and before the presentment of this indictment, did then and there present himself and make his personal appearance before N. H. Nagle, a duly and legally qualified and acting notary public within and for the county of Travis and State of Texas, who was then and there duly authorized by law as such officer and notary public to administer an oath; and the said

Henry Clay Pierce, having been duly sworn by the said N. H. Nagle, acting in her capacity as such officer and notary public, did then and there unlawfully, deliberately, corruptly and willfully, under the sanction of the oath so legally administered to him by the said N. H. Nagle, acting in the capacity aforesaid, make his voluntary false statement and declaration in writing, as follows:

## "*Affidavit.*

"The State of Texas, County of Travis:

"I, Henry Clay Pierce, do solemnly swear that I am the President (President, Secretary, Treasurer or Director) of the corporation known and styled Waters-Pierce Oil Company, duly incorporated under the laws of Missouri, on the 29th day of May, 1900, and now transacting or conducting business in the State of Texas, and that I am duly authorized to represent said corporation in making this affidavit, and I do further solemnly swear that the said Waters-Pierce Oil Company, known and styled as aforesaid, has not since the 31st day of January, 1900, created, entered into or become a member of, or a party to, and was not, on the 31st day of January, 1900, nor at any day since that date, and is not now, a member of or a party to any pool, trust, agreement, combination, confederation or understanding with any other corporation, partnership, individual or any other person or association of persons to regulate or fix the price of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever, or the price or premium to be paid for insuring property against loss or damage by fire, lightning, storm, cyclone, tornado, or any other kind of policy issued by the parties aforesaid; and that it has not entered into or become a member of or a party to any pool, trust, agreement, contract, combination or confederation to fix or limit the amount of supply or quantity of any article of manufacture, mechanism, merchandise, commodity, convenience, repair, or any product of mining, or any article or thing what-

soever, or the price or premium to be paid for insuring property against loss or damage by fire, lightning, storm, cyclone, tornado, or any other kind of policy issued by the parties aforesaid; and that it has not issued, and does not own any trust certificates for any corporation, agent, officer or employé, or for the directors or stockholders of any corporation, has not entered into, and is not now in any combination, contract, or agreement with any person or persons, corporation or corporations, or with any stockholders or directors thereof, the purpose and effect of which said combination, contract, or agreement would be to place the management or control of such combination or combinations, or the manufactured product thereof, in the hands of any trustee, or trustees, with the intent to limit or fix the price, or lessen the production and sale of any article of commerce, use or consumption, or to prevent, restrict, or diminish the manufacture or output of any such article; that it has not entered into any conspiracy, defined in the preceding sections of this act, to form or secure a trust or monopoly in restraint of trade; that it has not been since January 31, A. D. 1900, and is not now, a monopoly by reason of any conduct on its part, which would constitute it a monopoly under the provisions of sections 2, 3, 4, 5, 6, 10, and 11 of this act, and is not the owner or lessee of a patent to any machinery intended, used or designed for manufacturing any raw material or preparing the same for market by any wrapping, baling or other process, and while leasing, renting or operating the same, refuses or fails to put the same on the market for sale; that it has not issued and does not own any trust certificates, and has not, for any corporation or any agent, officer or employé thereof, or for the directors or stockholders thereof, entered into, and is not now in any combination, contract or agreement with any person or persons, corporation or corporations, or with the stockholders, director or any officer, agent, or employé of any corporation or corporations, the purpose and effect of which combination, contract or agreement would be a conspiracy to defraud, as defined in section 1 of this act, or to

create a monopoly, as defined in sections 2, 3, 4, 5, 6, 10 and 11 of this act.

"HENRY CLAY PIERCE,

"(*President, Secretary, Treasurer or Director*).

'Subscribed and sworn to before me, a notary public within and for the county of Travis, this 31st day of May, 1900.

(Signed)                "N. H. NAGLE,

"*Notary Public.*

"Whereas in truth and in fact the said Waters-Pierce Oil Company, mentioned in the above false statement and declaration in writing, had since the 31st day of January, 1900, created, entered into, and became a member of, and a party to, and was on the 31st day of January, 1900, and on every day since the 31st day of January, 1900, up to and on the 31st day of May, 1900, then and there a member of, and a party to, a pool, trust, agreement, combination, confederation and undertaking with other corporations, individuals, and other persons and association of persons, to wit, with the Standard Oil Company of New Jersey, a corporation incorporated under the laws of the State of New Jersey, and with all the Standard Oil Companies of the United States, the names and descriptions of said companies being to said grand jurors unknown after diligent inquiry, and with John D. Rockefeller, John D. Archbold, H. H. Rogers and other individuals and persons whose names and a description of whom are to said grand jurors unknown after diligent inquiry, to regulate and fix the price of petroleum and all of the products of petroleum, being articles of manufacture and a commodity and a convenience and a product of mining and an article and a thing: and, whereas, in truth and in fact the said Waters-Pierce Oil Company, hereinbefore mentioned, had, since the 31st day of January, 1900, created, entered into and become a member of, and a party to, and was on the 31st day of January, 1900, and was on every day since the said 31st day of January, 1900, up to and on the 31st day of May, 1900, then and there a member of and a party to a pool, trust, agree-

ment, combination, confederation and undertaking with other corporations, individuals, and other persons and association of persons, to wit, the Standard Oil Company of New Jersey, a corporation incorporated under the laws of the State of New Jersey, and with all the Standard Oil Companies of the United States, the names and descriptions of said companies being to said grand jurors unknown after diligent inquiry, and with John D. Rockefeller, John D. Archbold, H. H. Rogers and other individuals and persons whose names and a description of whom are to said grand jury unknown after diligent inquiry, to fix and limit the amount of supply and quantity of petroleum and all of the products of petroleum, the said petroleum and all the products of petroleum being articles of manufacture and a commodity and a convenience and a product of mining and an article and a thing; and whereas in truth and in fact the said Waters-Pierce Oil Company, hereinbefore mentioned, had since the 31st day of January, 1900, and on every day since said 31st day of January, 1900, up to the 31st day of May, 1900, issued, and did then and on the 31st day of May, 1900, issue trust certificates to another corporation, to wit, the Standard Oil Company of New Jersey, hereinbefore described, its agents, officer and employee, to wit, one J. P. Gruet, and one John D. Johnson, and other agents, officers and employees of said Standard Oil Company of New Jersey, whose names and descriptions are to said grand jurors unknown, after diligent inquiry, whereby the said Standard Oil Company of New Jersey then and there became the owner of the majority of all the shares of stock of the said Waters-Pierce Oil Company and the owner of a controlling interest in said Waters-Pierce Oil Company, which said false statement, so made as aforesaid by the said Henry Clay Pierce, was not then and there required by law, nor made in the course of judicial proceedings. Yet the same was then and there, nevertheless, willfully and deliberately made, and was willfully and deliberately false, as he, the said Henry Clay Pierce, then and there well knew.

"Against the peace and dignity of the State."

To this petition the Governor of Missouri responded by issuing a warrant for the arrest of the petitioner and his delivery to the agent of the State of Texas.

While the respondent held the petitioner in custody upon this warrant the writ of *habeas corpus* was issued. The petitioner, after alleging that he was held in custody by the respondent solely by virtue of the warrant issued by the Governor of Missouri, further alleged in his petition:

"That said restraint, imprisonment, detention and confinement are illegal, and that the illegality thereof consists in this, to wit:

"First. It is not shown by any sufficient averments in the said indictment that the facts stated or opinions expressed by petitioner in the affidavit set forth in said indictment were false when the said affidavit was made, and hence the indictment charges no offense under the laws of the State of Texas. That so far as the averments of the said indictment are concerned, the conclusion, judgment and opinion of petitioner expressed in the affidavit are only alleged to be false in the conclusion, judgment and opinion of the grand jury preferring said indictment.

"Second. That the affidavit made by your petitioner was in the form prescribed by an act of the legislature of the State of Texas, entitled 'An act to prohibit pools, trusts, monopolies and conspiracies to control business and prices of articles; to prevent the formation or operation of pools, trusts, monopolies and combinations of charters of corporations that violate the terms of this act, and to authorize the institution and prosecution of suits therefor,' which was approved May 25th, 1899, and became effective January 31st, 1900 (Gen. Laws Texas, 1899, p. 246), and that the language of said affidavit must be construed and interpreted in connection with the related text of the act of which it forms a part; that the pools, trusts, combinations, conspiracies and monopolies prohibited by said act were such only as were formed by such natural or artificial legal entities as were then engaged in business in the State of Texas

and the indictment does not show or charge, that the Waters-Pierce Oil Company, organized on May 29, 1900, as stated by petitioner in said affidavit, contrary to the fact stated by your petitioner in said affidavit, was a member of, or party to, any pool, trust, agreement, combination, confederation, or understanding with any other corporation, partnership, individual, or any person or association of persons, then or theretofore transacting or doing business in the State of Texas, for the purpose of fixing the price or limiting the output or quantity of any article or thing whatsoever to be sold or marketed in said State of Texas.

"Third. That no charge of perjury or false swearing could legally be predicated upon any matter or thing stated in said affidavit, for the reason that the statements therein contained are mere expressions of legal conclusions or opinions upon a state of facts existent in the belief of the affiant.

"Fourth. The affidavit, being required by law, if false, could not be false swearing under the laws of the State of Texas.

"Fifth. For that it appears upon the face of the said indictment that more than four years elapsed between the date of the commission of the alleged offense and the finding of the said indictment."

No other grounds of the illegality of the petitioner's imprisonment than these were alleged in the petition.

*Mr. Joseph H. Choate* and *Mr. Joseph H. Choate, Jr.*, with whom *Mr. Henry S. Priest* was on the brief, for appellant:

Where a petition to a Circuit Court of the United States for a writ of *habeas corpus* raises a question of the construction or application of the Constitution of the United States, the case falls within § 5 of the act of March 3, 1891, and an appeal may be taken directly to this court. *Boske* v. *Comingore*, 177 U. S. 459; *Craemer* v. *Washington*, 168 U. S. 124; *In re Marmo*, 138 Fed. Rep. 201.

In this case the petition distinctly alleged that the detention of the appellant was in violation of the Constitution of the

United States, in that the indictment upon which the extradition proceedings were based did not constitute a "charge of crime" within the meaning of Art. IV, § 2, subd. 2 of the Constitution and therefore did not justify the arrest. This raised a question of the construction and application of the Constitution. *Roberts* v. *Reilly,* 116 U. S. 80; *Matter of Strauss,* 197 U. S. 324, which was the substantial question litigated as appears from the opinion below, to which the court may and should refer. *Loeb* v. *Columbia Township,* 179 U. S. 472.

The appeal to this court was properly taken and the fact that a separate appeal was subsequently taken to the Circuit Court of Appeals could not affect the jurisdiction of this court, which had already attached. *Columbus Co.* v. *Crane Co.,* 174 U. S. 600. Nor could the subsequent appeal constitute a waiver of this appeal. *Pullman Co.* v. *Central Co.,* 171 U. S. 138.

The validity of the warrant on which the appellant was arrested depends upon the substantial sufficiency of the indictment on which it was based. Unless that indictment, when tested as on motion in arrest of judgment, is capable of supporting a conviction, the requirements of the Constitution are not fulfilled and the extradition is unauthorized.

The right of interstate extradition does not exist by comity. It rests upon Art. IV, § 2, subd. 2, of the Constitution and upon the legislation of Congress (Rev. Stat. § 5278, act of February 12, 1793, c. 7, 1 Stat. 302). *Ex parte Morgan,* 20 Fed. Rep. 298; *In re Kopel,* 145 Fed. Rep. 505. Whenever a State attempts to exercise the power to extradite, the proceedings must conform to the requirements of the Constitution and of the act of Congress or they will be unauthorized and void.

The meaning of the words "charged with crime" as used in the Constitution, is that the person whose surrender is demanded shall have been "charged in due form of law in some proper judicial proceeding instituted in the State from which he is a fugitive. This charge is to be the foundation for the demand and for the warrant of surrender; and it cannot be

sufficient unless it contains all the legal requisites for the arrest of the accused and his detention for trial if he were within the State." Cooley, J., in Princeton Review, January, 1879, p. 165; Spear on Extradition (2d ed.), p. 376; *Ex parte Smith*, 3 MacLean, 121; *People ex rel. Lawrence* v. *Brady*, 56 N. Y. 182; *Roberts* v. *Reilly*, 116 U. S. 80, and cases cited.

The strictly analogous cases where, on *habeas corpus*, the release is sought of prisoners held for removal from one judicial district of the United States to another, also support the view above stated. *Stewart* v. *United States*, 119 Fed. Rep. 89; *In re Terrell*, 51 Fed. Rep. 213; *Greene* v. *Henkel*, 183 U. S. 249; *Tinsley* v. *Treat*, 205 U. S. 20; *In re Buell*, 3 Dill. 116; *In re James*, 18 Fed. Rep. 853; *United States* v. *Brawner*, 7 Fed. Rep. 86; *In re Dana*, 68 Fed. Rep. 886.

The indictment involved in this proceeding was fatally defective.

An indictment alleging merely that the accused made the statement and that it was false is insufficient, not because of any mere rule of pleading, but because of the omission to allege the facts inconsistent with the statements, which facts are part, not merely of the proper statement of the crime, but of the crime itself. In the absence of these facts the allegations that the statement was false is a mere conclusion of the pleader. The facts which constitute the truth must, therefore, be distinctly alleged, not because they are a requirement of the indictment as a pleading, but because without them the crime of false swearing can be shown only by conclusions.

The assignments of perjury or false swearing, moreover, must not only allege distinctly, and not by way of conclusion, what the true facts were, but must serve to demonstrate the falsity of the facts sworn to. If all that the assignments set out may be true and still be entirely consistent with the truth of the matter alleged to be false, there can be no substantial charge of false swearing, since nothing in the facts alleged would serve to impeach or destroy the truth of the facts sworn to by the accused. If the facts alleged to be true by the as-

signments of false swearing, and the facts sworn to by the accused are not inconsistent, the indictment is equivalent to a charge that the accused perjured himself in swearing to statements which were true. The statements alleged to be false and the statements alleged by the assignment to be true must in tenor and meaning be inconsistent so that both cannot by the same tokens of interpretation or inference be true. *Reg* v. *Whitehouse,* 3 Cox, C. C. 86; 2 Bishop's New Crim. Procedure, § 918.

The fact that the crime of perjury or false swearing cannot legally be charged without assignments of falsity sufficient within the above reasoning, is perfectly established in Texas. *Gabrielsky* v. *State,* 13 Tex. App. 428; *Higgins* v. *State,* 38 Tex. Crim. App. 539; *S. C.,* 43 S. W. Rep. 1012 (1898); *McMurtry* v. *State,* 38 Tex. Crim. App. 521; *S. C.,* 43 S. W. Rep. 1010 (Texas, 1885); *Morris* v. *State,* 83 S. W. Rep. 1126; *Turner* v. *State,* 30 Tex. Crim. App. 691. The indictment fails substantially to charge the crime of false swearing, because the statements alleged in the indictment to have been falsely sworn to by the appellant, are not statements of fact, but are expressions of mere opinions, beliefs and conclusions, upon which the crime of false swearing cannot be predicated.

The assignments of falsity are insufficient. No facts are alleged which are necessarily inconsistent with the statements of the appellant's affidavit.

The indictment fails to inform appellant of the charge against him with that degree of reasonable certainty which will enable him to prepare his defense.

The indictment discloses upon its face that, at the time it was filed, the prosecution was barred by the statute of limitations.

The indictment itself discloses the fact that it was not found in good faith.

The indictment is based upon an affidavit required by law, which cannot be the subject of a prosecution for the statutory crime of false swearing.

*Mr. F. J. McCord* and *Mr. Shepard Barclay*, with whom *Mr. Thomas T. Fauntleroy* was on the brief, for appellee:

There is no Federal question presented by this record. No one of the defects alleged to exist in the indictment involves the construction or application of the Constitution or of any law of the United States; no one of them invokes or asserts any right, privilege or immunity under the Federal Constitution or laws. *World's Exposition* v. *United States,* 56 Fed. Rep. 657; *Mining Co.* v. *Hanley,* 205 U. S. 233; *Carfer* v. *Caldwell,* 200 U. S. 292.

A mere charge of a crime, defined by the criminal law of a State, formulated upon affidavit before some magistrate, without indictment by a grand jury, is a sufficient basis for extradition, under the Federal law. *Day* v. *Inhabitants.* 8 Allen, 478.

Other cases likewise hold that a charge of crime need not be by indictment. *Ryan* v. *People,* 79 N. Y. 593; *Drinkall* v. *Spiegel,* 68 Connecticut, 441; *In re De Giacomo,* 7 Fed. Cas.; p. 366; *People* v. *Garnett,* 129 California, 364; *Rex* v. *Maynard,* Russ. & Ry. 240.

Every contention of illegality must be solved by interpretation of Texas law. Who shall make the interpretation? In the first instance, at least, the courts of that Commonwealth. The real issue of law is what the duly appointed courts of Texas hold as to the sufficiency of the indictment. *In re Voorhees,* 32 N. J. L. 141.

If those courts should err in the interpretation of their local enactments, the case would not thereby become one of Federal cognizance, unless in such ruling. (or in the consequences thereof) some right, privilege, or immunity secured to petitioner by the Federal law was infringed. No such claim appears as yet and if it did, *habeas corpus* is rather a collateral method of raising such an issue. The petition for *habeas corpus* asserts that the indictment is insufficient according to the Texas law. Perhaps the courts of that State will agree with the petitioner. The Federal judiciary will not in advance of

any Texas interpretation of Texas law, interpose and assume that duty. *Carfer* v. *Caldwell,* 200 U. S. 292; *In re Lennon,* 150 U. S: 393. See also *Ex parte Moebus,* 148 Fed. Rep. 39; *Storti* v. *Massachusetts,* 183 U. S. 142; *Spencer* v. *Silk Co.,* 191 U. S. 530; *Drury* v. *Lewis,* 200 U. S. 1; *Empire Co.* v. *Hanley,* 205 U. S. 1.

If jurisdiction here exists, there is still no merit in this appeal. Where the local court in question has jurisdiction of the subject-matter of the charge, mere insufficiency in the indictment in alleging facts to support the charge does not warrant a discharge on *habeas corpus.*

Whether facts charged in an indictment constitute a crime under the state statutes, the courts of the State should decide. It is their province to determine that question if they have jurisdiction of the subject-matter. *In re Belt,* 159 U. S. 95; *Hyde* v. *Shine,* 199 U. S. 62; *Riggins* v. *United States,* 199 U. S. 547; *Rogers* v. *Peck,* 199 U. S. 425; *Ex parte Moran,* 144 Fed. Rep. 594.

The use of *habeas corpus* (as sought in this case) is a collateral attack on the pending proceeding in the court of Texas, and is only maintainable if that court has no power to proceed at all. *Ex parte Watkins,* 3 Pet. 203; *United States* v. *Pridgeon,* 153 U. S. 59; *In re Kowalsky,* 73 California, 120.

The leading question on this branch of the case is whether the Texas court has jurisdiction of the offense alleged or of the charge, whatever may be said as to the sufficiency of the indictment.

If the facts are alleged in such way in the indictment as not to render the judgment of conviction thereon void on a collateral attack, then there is no ground to discharge on *habeas corpus*—for that only is available where the prisoner is held without jurisdiction. *Benson* v. *Henkel,* 198 U. S. 10; *Felts* v. *Murphy,* 201 U. S. 123; *Pierce* v. *Texas,* 155 U. S. 311; *Urquhart* v. *Brown,* 205 U. S. 179; *Hyde* v. *Shine,* 199 U. S. 62; *Carfer* v. *Caldwell,* 200 U. S. 293; *In re Lancaster,* 137 U. S. 393.

MR. JUSTICE MOODY, after making the foregoing statement, delivered the opinion of the court.

The first inquiry must be whether there is jurisdiction of this appeal, which was taken from the Circuit Court directly to this court. Since the passage of the act establishing the Circuit Court of Appeals (26 Stat. 826), appeals in *habeas corpus* cases from the District and Circuit Courts can only be taken to the Circuit Court of Appeals, unless they are of the kind specified in §.5 of the act, wherein a direct appeal to this court is allowed. *In re Lennon*, 150 U. S. 393. Of the latter class is " any case that involves the construction or application of the Constitution of the United States." In the case at bar the position of the appellant is that his detention in custody is unlawful, because the indictment, which is its only excuse, is not a charge of crime within the meaning of the provision of the Constitution regulating interstate extradition. Art. IV, § 2, par. 2. The precise and only question to be determined is whether the indictment constituted such a charge. The decision of this question requires us to ascertain and declare the meaning of the extradition clause, and therefore " involves the construction of the Constitution of the United States." *Craemer* v. *Washington*, 168 U. S. 124; *Boske* v. *Comingore*, 177 U. S. 459. And see *Wiley* v. *Sinkler*, 179 U. S. 58; *Motes* v. *United States*, 178 U. S. 458; *Cummings* v. *Chicago*, 188 U. S. 410. Against this view it is argued that the question whether this indictment is good under the laws of Texas brings under consideration only the laws of that State, and that, as there is no pretense that they violate the Constitution of the United States, there can be involved no construction or application of that Constitution. But the answer to this is that the laws of Texas are considered only as they are embraced in the ultimate inquiry whether the indictment constitutes a charge of crime in that State, and for no other purpose. It is further said by the appellee that the delivery up in this case was by virtue of state laws only, and we are invited to determine how far the State may make

laws for interstate extradition, independent of, though consistent with, the Federal Constitution. We decline to accept the invitation, because in the case at bar the demand of the Governor of Texas, which was complied with, was expressed to be " in pursuance of the provisions of the Constitution and laws of the United States." There is jurisdiction of the appeal.

The Constitution provides that " A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." No person may be lawfully removed from one State to another by virtue of this provision, unless: 1, He is charged in one State with treason, felony or other crime; 2, he has fled from justice; 3, a demand is made for his delivery to the State wherein he is charged with crime. If either of these conditions are absent the Constitution affords no warrant for a restraint of the liberty of any person. Here the only condition which it is insisted is absent is the charge of a crime. The only evidence of a charge of crime is the indictment, and the contention to be examined is that the indictment is insufficient proof that a charge has been made.

The counsel for the petitioner disclaim the purpose of attacking the indictment as a criminal- pleading, appreciating correctly that the point here is not whether the indictment is good enough, over seasonable challenge, to bring the accused to the bar for trial. Counsel concede that they cannot successfully attack the indictment except by showing that it does not charge a crime. The distinction between these two kinds of attack, though narrow, is clear. But it will not do to disclaim the right to attack the indictment as a criminal pleading and then proceed to deny that it constitutes a charge of crime for reasons that are apt only to destroy its validity as a criminal pleading. There must be objections which reach deeper into the indictment than those which would be good against it in the court where it is pending. We are unable to adopt the test

suggested by counsel, that an objection, good if taken on arrest of judgment, would be sufficient to show that the indictment is not a charge of crime. Not to speak of the uncertainty of such a test, in view of the varying practice in the different States, there is nothing in principle or authority which supports it. Of course, such a test would be utterly inapplicable to cases of a charge of crime by affidavit, which was held to be within the Constitution. *In the Matter of Strauss,* 197 U. S. 324. The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the State from which he has fled. *Roberts* v. *Reilly,* 116 U. S. 80, 95; *Pearce* v. *Texas,* 155 U. S. 311, 313; *Hyatt* v. *Corkran,* 188 U. S. 691, 709; *Munsey* v. *Clough,* 196 U. S. 364, 372; *Davise's Case,* 122 Massachusetts, 324; *State* v. *O'Connor,* 38 Minnesota, 243; *State* v. *Goss,* 66 Minnesota, 291; *Matter of Voorhees,* 32 N. J. L. 141; *Ex parte Pearce,* 32 Tex. Crim. 301; *In re Van Sciever,* 42 Nebraska, 772; *State* v. *Clough,* 71 N. H. 594.

Before proceeding further, it is well to set forth all the objections to the indictment made by counsel, in order to see whether, if any one of them is well founded, it shows that there was no charge of crime against the petitioner. For if all criticisms of the indictment should be approved, and they leave untouched in the pleading enough to show that the petitioner was charged with crime in the broad and practical sense in which those words ought to be understood, the condition prescribed by the Constitution has been performed.

The objections to the indictment which were advanced in the argument are six in number:

1. The statements in respect to which false swearing is alleged are not statements of facts but of opinion, and therefore, however falsely made, cannot amount to the crime of false swearing.

2. The assignments of falsity are insufficient, for no facts are

alleged which are necessarily inconsistent with the alleged false affidavit.

3. The charge is not alleged with the certainty required in an indictment.

4. Upon the face of the indictment the prosecution is barred by the statute of limitations.

5. The indictment discloses the fact that it was not found in good faith.

6. The affidavit was required by law, and therefore, if false, under the Texas law, lays the foundation for a prosecution for perjury, but not for false swearing.

The fifth and sixth objections require separate discussion. We are not informed of any principle by which we may inquire whether an indictment, duly found, was returned in good faith, but, whether that power exists or not, it is enough to say here that this objection does not seem to be true in fact.

Under the Texas law the crime of false swearing, as distinguished from perjury, can only be committed by a false oath to a voluntary declaration or affidavit, " not required by law or made in the course of a judicial proceeding." · The sixth objection asserts that the affidavit set forth in this indictment was one required by law. But this assertion is in the teeth of the allegation of the indictment, that the affidavit " was not then and there required by law nor made in the course of judicial proceedings." We cannot inquire into the truth of this allegation, which may present a mixed question of law and fact.

All the other objections are appropriate to a demurrer or a motion to quash or in arrest of judgment. They are attacks upon the indictment as a criminal pleading, the right to make which counsel expressly renounce. If well founded, they show that the indictment is bad. But the Constitution does not require, as an indispensable prerequisite to interstate extradition, that there should be a good indictment, or even an indictment of any kind. It requires nothing more than a charge of crime. Congress, in aid of the execution of the constitutional

provision, has enacted a law (§ 5278, Rev. Stat.), directing that the charge shall be made either by " an indictment found " or " an affidavit made before a magistrate;" and, as we have seen, this court has held that such an affidavit is sufficient, saying (197 U. S. 331), " doubtless the word 'charged' was used in its broad signification to cover any proceeding which a State might see fit to adopt, by which a formal accusation was made against an alleged criminal." But it is obvious that an objection which, if well founded, would destroy the sufficiency of the indictment, as a criminal pleading, might conceivably go far enough to destroy also its sufficiency as a charge of crime. Are then the objections made to the indictment of that nature? Let it be assumed that these are all well taken. Let it be assumed, without decision, that the false statements contained in the affidavit were statements of opinion; that the assignments of falsity were bad, because no facts necessarily inconsistent with them were alleged; that the certainty required in criminal pleading was not observed; and that the time alleged antedates the indictment by more than the period of the statute of limitations. Nevertheless, the indictment alleges that on a day named the petitioner deliberately and willfully made, under the sanction of an oath, legally administered, a voluntary false statement and declaration in writing, to wit, the affidavit, and that the affidavit was not required by law or made in the course of a judicial proceeding. The indictment, whether good or bad, as a pleading, unmistakably describes every element of the crime of false swearing, as it is defined in the Texas Penal Code, in art. 209, which follows.

" If any person shall deliberately and willfully, under oath or affirmation legally administered, make a false statement by a voluntary declaration or affidavit, which is not required by law or made in the course of a judicial proceeding, he is guilty of false swearing, and shall be punished by imprisonment in the penitentiary not less than two nor more than five years."

This court, in the cases already cited, has said, somewhat vaguely but with as much precision as the subject admits, that

the indictment, in order to constitute a sufficient charge of crime to warrant interstate extradition, need show no more than that the accused was substantially charged with crime. This indictment meets and surpasses that standard, and is enough. If more were required it would impose upon courts, in the trial of writs of *habeas corpus*, the duty of a critical examination of the laws of States with whose jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the States and fruitful of miscarriages of justice. The duty ought not to be assumed unless it is plainly required by the Constitution, and, in our opinion, there is nothing in the letter or the spirit of that instrument which requires or permits its performance.

*Judgment affirmed.*