*In re* RAYBORN

1. EXTRADITION—CONSTITUTIONAL LAW—DUE PROCESS—VALIDITY OF PROCEEDINGS.

Extradition and detention of fugitives from other states is valid only when constitutional requirements are met; the executive authority of the state from which a fugitive has fled may properly demand that the executive authority of the asylum state cause the fugitive to be arrested and detained until he is received by authorities of the state having jurisdiction over the crime, provided that an affidavit or indictment, made before a magistrate of the demanding state and certified as authentic by the governor or chief magistrate of the demanding state, charging the fugitive with a felony, treason or other crime is received by the executive authority of the asylum state and the person detained is the person sought (US Const, art 4, § 2; 18 USCA § 3182; CL 1948, § 780.1 *et seq.*).

2. HABEAS CORPUS—DETENTION—FUGITIVES—VALIDITY.

The validity of the detention of a person held under executive authority is properly tested by an inquiry on *habeas corpus*, which is generally limited to a determination whether constitutional requirements are met (US Const, art 4, § 2; 18 USCA § 3182).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3]  31 Am Jur 2d, Extradition §§ 3, 4.
[2]  31 Am Jur 2d, Extradition § 64.
   39 Am Jur 2d, Habeas Corpus §§ 4, 8, 11.

3. EXTRADITION—CONSTITUTIONAL LAW—DUE PROCESS—HABEAS COR-
PUS—DETENTION.

>   Constitutional provisions do not allow the required surrender of
>   a fugitive to be interfered with by a summary process of
>   *habeas corpus* upon speculation as to what should be the
>   result of a trial where the Constitution provides for its
>   taking place; all that is required for valid detention and
>   extradition is that the accused be properly charged with
>   crime (US Const, art 4, § 2; 18 USCA § 3182).

Appeal from Wayne, George T. Martin, J. Submitted Division 1 April 10, 1969, at Detroit. (Docket No. 5,289.) Decided July 30, 1969.

Complaint for a writ of *habeas corpus* by Jasper Luke Rayborn against the sheriff of Wayne county to prevent extradition to Georgia. Writ granted. The people appeal. Reversed, with directions.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Stephen H. Book,* Assistant Prosecuting Attorney, for the people.

*Frank Schwartz* and *Arthur M. Lang,* for defendant.

Before: LESINSKI, C. J., and FITZGERALD and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. This appeal involves the scope of inquiry on *habeas corpus* from an extradition warrant.

On September 22, 1967, the State of Georgia requested the Governor of the State of Michigan to extradite one Jasper Luke Rayborn for the offense of "larceny of an automobile." This request was

accompanied by an indictment against Jasper Luke Rayborn for the same offense, the indictment having been handed down by a grand jury at the May, 1967, term of the Superior Court for Clayton County, Georgia. On October 27, 1967, a hearing was held before a legal representative of the Governor. Pursuant to this hearing, the acting Governor of the State of Michigan issued a rendition warrant on January 17, 1968.

On February 29, 1968, Rayborn's counsel petitioned for a writ of *habeas corpus*, contending Rayborn was not a fugitive as he was charged with the commission of a non-existent crime. The trial court granted the writ, and from this grant the people appeal.

The indictment charges Rayborn with "wrongfully, * * * tak[ing] [and] steal[ing] * * * one 1967 * * * Buick automobile of the value of $3,800, and the property of Claudette Carter Rayborn."

The indictment thus charges Rayborn with the commission of acts which, from the face of the indictment, are criminal under Georgia law. It appears, however, that Claudette Carter Rayborn was the wife of the appellee at the time of the taking. Appellee contends, as he did below, that the trial court may properly go beyond the face of the indictment to make this factual determination and may then proceed to rule that the acts alleged do not constitute a crime under the law of the demanding state. Appellee predicates his claim that he is charged with a non-existent crime on the following allegations: that Georgia is a common law state; that at common law it is not the crime of stealing to take the property of one's wife; and that this rule has not been explicitly abolished in Georgia.

The people, on the other hand, contend the trial court erred in granting the writ. The people maintain the constitutional requirements for extradition are satisfied if a charge of crime appears on the face of the indictment and therefore further inquiry is both improper and unnecessary. It is for the Georgia court to decide whether Rayborn's acts are subject to criminal sanctions. Alternatively, it is at least arguable that under present Georgia law a man can be convicted of stealing his wife's property as certain related common-law disabilities have been statutorily abolished.

The Constitution of the United States forms the basis for extradition. Article IV, § 2 provides:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

An early Congress thought this clause not to be self-executing, and thus enacted a statute which, with slight modification, presently reads as follows:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such de-

mand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged." (18 USCA § 3182)

Extradition is further facilitated by the procedural machinery of the Uniform Criminal Extradition Act,[1] which has been adopted by both Michigan and Georgia.[2] The federal statute, mirrored in part by the uniform act, imposes a duty on the executive authority of the asylum state to deliver up a person "charg[ed] with having committed treason, felony, or other crime." The validity of the detention of a person held under the executive authority is properly tested on *habeas corpus*. *Johnson* v. *Matthews* (CA DC, 1950), 182 F2d 677; *Dragisick* v. *Judge of Recorder's Court of the City of Detroit* (1917), 195 Mich 112. The detention is improper if compliance with the constitutional requirements for extradition is lacking. *Pierce* v. *Creecy* (1907), 210 US 387 (28 S Ct 714, 52 L Ed 1113). These requirements include the showing that the person detained is charged with treason, felony or other crime; that the person detained is the fugitive sought; and that a demand for his return has been made in due form. *Pierce, supra.* Thus, the inquiry on *habeas corpus* is generally limited to these topics. *In re Palmer* (1904), 138 Mich 36; *United States* v. *Donovan* (CA 2, 1963), 321 F2d 114. The scope of the first requirement (and the attendant inquiry) is in question here.

Is the asylum state free to determine that the acts allegedly committed by the fugitive do not constitute a crime under the law of the demanding

---

[1] MCLA § 780.1 *et seq.* (Stat Ann 1954 Rev § 28.1285[1] *et seq.*).
[2] Ga. Code § 44.401 *et seq.*

state? A few courts have answered this question in the affirmative.[3] Several decisions of the United States Supreme Court provide, however, authoritative guidance in our holding that the lower court's determination exceeded the proper bounds of inquiry.

In *Pierce* v. *Creecy, supra,* the petitioner claimed that the indictment did not charge him with a crime for the reason, *inter alia,* that the crime of false swearing, by definition, is limited to false statements of fact and does not include false statements of opinion. Petitioner alleged his statements were merely of opinion. The Court assumed *arguendo* the truth of petitioner's allegation, but nevertheless proceeded to state that a crime was charged within the meaning of the constitutional provision. The Court added (p 404):

"This court, in the cases already cited, has said somewhat vaguely, but with as much precision as the subject admits, that the indictment, in order to constitute a sufficient charge of crime to warrant interstate extradition, need show no more than that the accused was substantially charged with crime. This indictment meets and surpasses that standard, and is enough. If more were required it would impose upon courts, in the trial of writs of *habeas corpus,* the duty of a critical examination of the laws of states with whose jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the states, and fruitful of miscarriages

---

[3] Most notably, the Supreme Court of Washington, in *Application of Varona* (1951), 38 Wash 2d 833 (232 P2d 923). There the petitioner was charged with the unlawful taking of a sum of money which belonged to petitioner and certain other persons doing business as a partnership. The Court examined the case law of the demanding state, found that partnership property had been deemed not a subject of theft by a partner, and ruled that no crime was charged. Other cases are collected at 40 ALR2d 1151.

of justice. The duty ought not to be assumed unless it is plainly required by the Constitution; and, in our opinion, there is nothing in the letter or the spirit of that instrument which requires or permits its performance."

In *Drew* v. *Thaw* (1914), 235 US 432 (35 S Ct 137, 59 L Ed 302) the petitioner, an escapee from a New York mental institution, was released on *habeas corpus* after having been detained on a warrant from the governor of New Hampshire. New York had sought extradition for the crime of conspiring to commit an act for the perversion or obstruction of justice. The demanding state alleged that petitioner had "conspired with certain persons to procure his escape from the hospital, and did escape, to the obstruction of justice and of due administration of the laws." Petitioner maintained that his acts were not criminal (and therefore no crime was charged) as he was insane during the planning of the escape, or, if he was sane, he was entitled to discharge and therefore had not "obstructed justice." The Court (per Holmes, J.) reversed the order discharging petitioner, saying in part:

"We do not regard it as open to debate that the withdrawal, by connivance, of a man from an insane asylum, to which he had been committed as Thaw was, did tend to obstruct the due administration of the law. At least, the New York courts may so decide. Therefore the indictment charges a crime.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"\*     \*     \*     In extradition proceedings, even when, as here, a humane opportunity is afforded to test them upon *habeas corpus,* the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. The Constitution says nothing about *habeas corpus*

in this connection, but peremptorily requires that upon proper demand the person charged shall be delivered up to be removed to the state having jurisdiction of the crime.  \*  \*  \*  When, as here, the identity of the person, the fact that he is a fugitive from justice, the demand in due form, the indictment by a grand jury for what it and the governor of New York allege to be a crime in that state, and the reasonable possibility that it may be such, all appear, the constitutionally required surrender is not to be interfered with by the summary process of *habeas corpus* upon speculations as to what ought to be the result of a trial in the place where the Constitution provides for its taking place.  We regard it as too clear for lengthy discussion that Thaw should be delivered up at once."

*Roberts* v. *Reilly*[4] (1885), 116 US 80 (6 S Ct 291, 29 L Ed 544) also adheres to the standard for extradition which requires only the allegation of the demanding state that a crime of a specified nature is charged.  The state of Georgia has charged Rayborn with commission of a crime, that of "larceny of an automobile."  It is for Georgia to decide whether criminal sanctions should be imposed.

The trial court is ordered to set aside its order granting the writ of *habeas corpus* and is directed to enter an order consistent with this opinion.

All concurred.

---

[4] In *Roberts* the indictment charged petitioner with grand larceny. Petitioner contended his acts were not criminal (and therefore no crime was charged) as the alleged victim did not have the requisite capacity of ownership under the law of the demanding state.  The Court held that the question is properly raised at trial in the demanding state, not on *habeas corpus* in the asylum state. See also, *People* v. *McLaughlin* (1928), 247 NY 238 (160 NE 357).