THE PEOPLE *ex rel.* PETER O. ABELES, Relator-Appellant, *v.* RICHARD J. ELROD, Sheriff of Cook County, Respondent-Appellee.

(No. 60241; ▮▮▮▮▮▮▮▮▮▮)

First District (5th Division)—March 14, 1975.

*Rehearing denied April 17, 1975.*

Jerold S. Solovy, Arthur M. Sussman and Gregory G. Wille, all of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Ricky L. Petrone, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

This appeal results from the quashing of a writ of habeas corpus by which relator-appellant, Peter Abeles, a resident of Illinois, sought to challenge the validity of an extradition order returning him to Wisconsin to answer an indictment in that State. Abeles contends (1) the indictment fails to charge a crime under Wisconsin law; (2) a Wisconsin trial judge illegally amended the indictment; and (3) due process required that he be given notice and an opportunity to be heard before the Governor of Illinois ordered his extradition.

On February 28, 1973, a Wisconsin grand jury for Dane County indicted Abeles for the offense of conspiring to restrain trade, in violation of section 133.01(1) and (3),[1] Wisconsin Statutes, 1971. Also named in the indictment were Waste Management of Wisconsin, Inc., of which Abeles was a vice president and its general manager in Dane County from 1969 through December 1972, and McKinley Standridge, an employee of Waste Management and its general manager in said county

---

[1] That section provides:

"(1) Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is hereby declared illegal. Every combination, conspiracy, trust, pool, agreement or contract intended to restrain or prevent competition in the supply or price of any article or commodity in general use in this state, to be produced or sold therein or constituting a subject of trade or commerce therein, or which combination, conspiracy, trust, pool, agreement or contract shall in any manner control the price of any such article or commodity, fix the price thereof, limit or fix the amount or quantity thereof to be manufactured, mined, produced or sold in this state, or fix any standard or figure in which its price to the public shall be in any manner controlled or established, is hereby declared an illegal restraint of trade. Every person, corporation, copartnership, trustee or association who shall either as principal or agent become a party to any contract, combination, conspiracy, trust, pool or agreement herein declared unlawful or declared to be in restraint of trade, or who shall combine or conspire with any other person, corporation, copartnership, association or trustee to monopolize or attempt to monopolize any part of the trade or commerce in this State shall forfeit for each such offense not less than $100 nor more than $5,000.
\* \* \*
(3) Whoever violates sub. (1) may be fined not more than $5,000 or imprisoned not more than 5 years or both."

from December 1972 through the date of the indictment. In essence, they were charged with conspiring with others to submit collusive, noncompetitive or rigged bids on solid waste removal contracts in Dane County. Specifically, the indictment in pertinent part charged:

"16. Commencing in the year 1970, the exact date being unknown to the Grand Jury, and continuing thereafter until at least February, 1973, the defendants and co-conspirators named herein did feloniously engage in an unlawful combination and conspiracy intended to restrain competition in the supply or price of an article or commodity which is the subject of trade or commerce in this state.

17. The aforesaid combination and conspiracy consisted of a continuing agreement, understanding and concert of action between the defendants and co-conspirators to submit collusive, noncompetitive or rigged bids on solid waste removal to various public and private entities located in Dane County and to allocate solid waste removal jobs in Dane County among themselves."

Paragraph 18 set forth certain conduct which allegedly was in furtherance of the conspiracy, as follows:

"a. Attempted to secure agreements from other solid waste haulers whereby competitors would not take each others accounts and would call the solid waste hauler then servicing the account to obtain a price to quote and would exchange information about prices to be bid on public jobs which were required to be bid secretly and competitively.

b. During November 1971 and December 1971 continuing through February 1973, the exact dates being unknown to the Grand Jury, agreed not to take each others' accounts and agreed to effectuate the agreement by calling the solid waste hauler then servicing the account to obtain a price to quote.

c. Personally met to designate or attempt to designate the solid waste hauler who was to submit the low bid on public and private contracts being let on secret and on negotiated bid bases and engaged in a similar pattern of conduct by use of the telephone to accomplish or attempt to accomplish the same purpose.

d. Submitted noncompetitive bids and quotes on public and private contracts in agreement with other solid waste haulers bidding or quoting on the same project."

After reciting the effects of the combination and conspiracy, the indictment then concluded:

"The offense charged and the acts stated herein are contrary to sec. 133.01 (1) and (3) of the Wisconsin Statutes in such case

made and provided and against the peace and dignity of the State of Wisconsin."

In Wisconsin, Abeles's codefendants made a motion to dismiss the indictment as failing to charge a crime. They contended that the indictment charged a conspiracy to violate the second sentence of section 133.01 (1) in that they did feloniously combine "to restrain competition in the supply or price of an article or commodity," and they argued that Waste Management provided a service of waste disposal and not a sale of an "article or commodity." The Wisconsin Supreme Court had held that the second sentence did not apply to the rendition of services. (*State v. Milwaukee Braves, Inc.*, (1966), 31 Wis.2d 699, 144 N.W.2d 1, *cert. denied*, (1966), 385 U.S. 990, 17 L.Ed.2d 451, 87 S.Ct. 595.) However, Judge Jackman of the Dane County Circuit Court denied the motion to dismiss, stating:

"We are of the opinion that the particulars set forth in paragraphs 17 and 18 do clarify the meaning of the indictment so that the defendants cannot mistake what acts plaintiff claims were unlawful. The draftsman of the indictment was in error in describing the conspiracy as one to restrain competition in the supply or price of an article or commodity. But he did go on to describe the offense as one of bid rigging for service. We are of the opinion that the defect is a formal one which does not prejudice either of the defendants because they are fully informed of the precise character of the offense charged. Sec. 971.26.[2] The error is one of description, which is clarified and made quite certain in the following paragraphs, so that the descriptive error is quite apparent. An indictment is sufficient if it specifies with clarity the act or acts constituting the offense and the section of the statute violated. We are of the opinion that the indictment is sufficient in the light of Sec. 971.26.

It is our opinion that the indictment is a sufficient allegation of an offense under the first sentence of Sec. 133.01 standing alone. Defendants, however, contend that that sentence is modified by the second sentence which applies only to trade in articles and commodities. In *State v. Milwaukee Braves*, 31 Wis. 2d 699, 716, it is said:

'We conclude that the insertion of the second sentence in 1921 did not limit the broad language of the first or third sentences to

---

[2] Section 971.26 provides:

"No indictment or information shall be invalid nor shall the trial, judgment or other proceedings be affected by reason of any defect or imperfection in matters of form which does not prejudice the defendant."

the types of combination described in the second.' We think this answers defendants' contention that no offense has been stated.

For the reasons above stated it is hereby ordered that defendants' motion to dismiss the indictment for failure to allege an offense is denied."

Following the denial of this motion, the State of Wisconsin began extradition proceedings for the return of Mr. Abeles.

OPINION

The question of extradition is of constitutional significance. In the instant case, Illinois has an interest in protecting its citizens while Wisconsin has an interest in enforcing its laws. Cognizant of this conflict, the founding fathers provided in the United States Constitution, section 2, clause 2 of article IV, as follows:

"A person charged in any State with Treason, Felony or other Crime who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

■■ Since this provision is not self-executing (*Kentucky v. Dennison*, 65 U.S. (24 How.) 66, 104, 16 L.Ed. 717, 728), Congress enacted a statute (62 Stat. 822, 18 U.S.C.A. 3182) providing for extradition where the executive authority of the demanding State presents to the executive authority of the asylum State "a copy of an indictment * * * charging the person demanded with having committed treason, felony, or other crime * * *."

Illinois has adopted the Uniform Criminal Extradition Act (Ill. Rev. Stat. 1973, ch. 60, pars. 18—49), which provides in section 3 that the indictment must "substantially charge the person demanded with having committed a crime under the law of that state."

Abeles's first contention is that he was not substantially charged with a crime under the laws of Wisconsin.[3] Specifically, he maintains that the indictment charges price-fixing of an article or commodity while Waste Management provided only a service. Essentially, his argument reiterates

---

[3] It has been stated that in an extradition proceeding the only matters open for review are (1) whether the accused is substantially charged with a crime under the laws of the demanding state; (2) whether the person in custody is the person charged; and (3) whether he is a fugitive from justice. (*People ex rel. Kubala v. Woods*, 52 Ill.2d 48, 284 N.E.2d 286; *People ex rel. Goldstein v. Babb*, 4 Ill.2d 483, 123 N.E.2d 639; *cert. denied*, 349 U.S. 928.) A fourth element, whether the papers are regular in form, was iterated by the court in *People ex rel. Levin v. Ogilvie*, 36 Ill.2d 566, 224 N.E.2d 247. In any event, here the only question in dispute is the first.

that posed by his codefendants in their motion to dismiss before Judge Jackman in Wisconsin.

■■■ The scope of the judicial hearing in an extradition case was thoroughly considered and discussed in *People ex rel. Gilbert v. Babb*, 415 Ill. 349, 114 N.E.2d 358. There, in answer to appellant's contention that it was incumbent upon courts of the asylum State to hear and determine the validity of an indictment returned in the demanding State, the court reasons as follows, at page 355:

> "The scope of the extradition inquiry and the issues which are presented by it have been resolved by many decisions of the Supreme Court of this nation and, in essence, the established rule is that the court may determine whether a crime has been established in the demanding State, whether the fugitive in custody is the person so charged, and whether the fugitive was in the demanding State at the time the alleged crime was committed. * * *
>
> In *Drew v. Thaw*, 235 U.S. 432, 59 L.Ed. 302, the court had this to say about the scope of the *habeas corpus* proceeding: 'In extradition proceedings, even when, as here, a humane opportunity is afforded to test them upon habeas corpus, the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. The Constitution says nothing about habeas corpus in this connection, but peremptorily requires that upon proper demand the person charged shall be delivered up to be removed to the state having jurisdiction of the crime. * * * The technical sufficiency of the indictment is not open.' "

Whether the attack upon an indictment is addressed to the "technical sufficiency" of the charge of crime or constitutes a complaint that the indictment fails to "substantially charge" a crime is sometimes a difficult question. Here, it is contended that the facts alleged in the indictment do not, under Wisconsin law, constitute a crime since they fail to show a conspiracy to restrain competition in the supply or price of an article or commodity. In *Pierce v. Creecy*, 210 U.S. 387, 52 L.Ed. 1113, 28 S.Ct. 714, the Supreme Court, while holding that an indictment sufficiently charged a crime for purposes of extradition, at the same time recognized that:

> "[A]n objection which, if well founded, would destroy the sufficiency of the indictment, as a criminal pleading, might conceivably go far enough to destroy also its sufficiency as a charge of crime." 210 U.S. 387, 404.

■■ We do not believe, however, such an objection has been presented here. It appears to us that the facts alleged in the indictment are sufficient to substantially charge defendant with violation of section 133.01(1)

and (3) of the Wisconsin Statutes, as alleged in the conclusion of the indictment. We are persuaded by the opinion of Judge Jackman of the Wisconsin Circuit Court that the defect in the indictment is merely a formal one and that there is a sufficient charge of a violation of the first sentence of section 133.01(1), which reads as follows: "Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is hereby declared illegal," in that it specifies with clarity the act or acts constituting the offense and the section of the statute violated. As stated in 31 Am.Jur.2d *Extradition* § 36 (1967):

> "To support the extradition of an alleged fugitive from justice, the affidavit or indictment accompanying the demand must substantially charge the accused with the commission of a crime against the laws of the demanding state. While it need not conform to technical rules, a pleading is not sufficient if it is so indefinite as to fail to inform the accused of the nature of the charge against him. However, since the sufficiency of an indictment or affidavit must be tested in accordance with the laws of the demanding state, extradition will not generally be denied on the ground of insufficiency of the charge of crime where the question might reasonably be decided the other way by the courts of that state." (Footnotes omitted.)

No more persuasive case on point could be found than the decision of the Wisconsin trial court sustaining the indictment against the same objection of insufficiency raised by Abeles's codefendants. Since it reasonably appears the question might be decided against relator in Wisconsin, we cannot say the indictment is insufficient for purposes of extradition.

Nor are we persuaded by defendant's second contention that Judge Jackman's construction of the indictment constituted an illegal amendment. Even if so construed, this objection would not be open for review in an extradition hearing, since it is addressed merely to the technical sufficiency of the indictment or its form. *Pierce v. Creecy, supra; People ex rel. Kubala v. Woods, supra.*

Finally, we believe the objection that due process required a hearing by the Governor before extradition is effectively disposed of by *Munsey v. Clough,* 196 U.S. 364, 25 S.Ct. 282, 49 L.Ed. 515, where the following appears at page 372:

> "The proceedings in matters of this kind before the governor are summary in their nature. The questions before the governor, under the section of the Revised Statutes, above cited,[4] are whether the person demanded has been substantially charged with a crime,

---

[4] Former section 5278, presently 62 Stat. 822, 18 U.S.C.A. 3182.

and whether he is a fugitive from justice. The first is a question of law and the latter is a question of fact, which the governor, upon whom the demand is made, must decide upon such evidence as is satisfactory to him. Strict common-law evidence is not necessary. The statute does not provide for the particular kind of evidence to be produced before him, nor how it shall be authenticated, but it must at least be evidence which is satisfactory to the mind of the governor. *Roberts v. Reilly,* 116 U.S. 80, 95. The person demanded has no constitutional right to be heard before the governor on either question, and the statute provides for none. To hold otherwise would, in many cases, render the constitutional provision, as well as the statute passed to carry it out, wholly useless."

See also, *Lee Won Sing v. Cottone* (D.C. Cir. 1941), 123 F.2d 169; *Horne v. Wilson* (E.D. Tenn. 1969), 306 F.Supp. 753.

For these reasons, the order quashing the writ of habeas corpus is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.