## WILLIAMS v WAYNE COUNTY SHERIFF

Docket No. 55037. Argued January 7, 1975 (Calendar No. 1). Resubmitted August 25, 1975.—Decided November 25, 1975.

On October 9, 1969, the Governor of North Carolina executed a requisition for the extradition of plaintiff Robert F. Williams. Plaintiff sought habeas corpus relief alleging *inter alia* that some of the indictments in which he was charged were *prima facie* invalid under a decision of the Supreme Court of North Carolina and that a second set were forgeries. The Wayne Circuit Court, Thomas Roumell, J., refused to admit proofs that the grand jury in North Carolina never returned the second indictments against Williams and that his name on them was a forgery. The petition for writ of habeas corpus was denied. The Court of Appeals, J. W. Fitzgerald, P. J., and R. B. Burns and Holbrook, JJ., dismissed plaintiff's complaint for a writ of habeas corpus (Docket No. 16584). Plaintiff appeals.

The Court of Appeals is affirmed by an equally divided court.

Coleman, J., with Fitzgerald and Lindemer, JJ., concurring, would affirm. Plaintiff has not so distinguished his challenge to extradition based on an indictment from traditional case law as to warrant an exception to the long-standing rule that a court in habeas corpus may not look behind the face of the indict-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 902.
[2] 31 Am Jur 2d, Extradition § 47.
[3] 31 Am Jur 2d, Extradition § 6.
[4] 31 Am Jur 2d, Extradition § 53.
   Sufficiency of statements in demanding papers in extradition proceedings as allegation or proof of presence of accused in demanding state at time of commission of alleged crime or that accused is a fugitive. 135 ALR 973.
[5] 31 Am Jur 2d, Extradition §§ 36, 54.
   Determination, in extradition proceedings, or on habeas corpus in such proceedings, whether a crime is charged. 40 ALR2d 1151.
[6–10, 13, 15–21] 31 Am Jur 2d, Extradition § 35 *et seq.*
[11] 31 Am Jur 2d, Extradition § 40.
[12] 31 Am Jur 2d, Extradition § 61.
[14] 31 Am Jur 2d, Extradition § 4.
[22, 23] 31 Am Jur 2d, Extradition § 65 *et seq.*

ment; it is a question of law, not fact. Plaintiff's allegation of forgery, involving questions of North Carolina law and procedure, is best examined by the North Carolina court.

Williams, J., with whom T. G. Kavanagh, C. J., and Levin, J., concurred, voted to remand to Wayne Circuit Court for further habeas corpus proceedings, on the grounds that if the indictments on record are indeed forgeries there can be no lawful extradition upon them. The authentication of the indictments by the Governor of North Carolina is not controlling proof of their authenticity; plaintiff may properly introduce proofs tending to dispute a claim of authenticity by showing the indictments to be forgeries. If the indictments are forgeries or were not returned by the grand jury, petitioner would be entitled to resist extradition, but the petitioner must present clear and convincing evidence supporting his claim of non-indictment in order to resist extradition successfully.

Affirmed.

## Decision of the Court

1. Appeal and Error—Equally Divided Court.

A decision of the Court of Appeals dismissing a complaint for a writ of habeas corpus, which alleged that a request for plaintiff's extradition was based on forged indictments, is affirmed by an equally divided court.

## Opinion for Affirmance

### Coleman, Fitzgerald, and Lindemer, JJ.

2. Extradition—Duty.

*The governor of the asylum state has the duty to extradite a fugitive when the governor of the demanding state produces an indictment charging crime, certified as authentic.*

3. Extradition—Uniform Criminal Extradition Act—Federal Law.

*The Uniform Criminal Extradition Act recognizes that Federal law is controlling on the subject of extradition; the act is expressly subject to all acts of Congress (MCLA 780.1 et seq.).*

4. Extradition—Fugitivity—Presumptions—Habeas Corpus.

*The question whether the person whose extradition is demanded is a fugitive from the justice of the state which makes the demand is a question of fact for decision by the governor; his decision on fugitivity creates a presumption which may be overturned by contrary proof in habeas corpus proceedings.*

5. EXTRADITION—HABEAS CORPUS—CHARGE OF CRIME—QUESTION OF
   LAW.

   *Whether the fugitive is substantially charged with a crime by the
   indictment of the state seeking extradition is a question of law
   which is always open upon the face of the papers to judicial
   inquiry, upon an application for a discharge under a writ of
   habeas corpus.*

6. EXTRADITION—INDICTMENT—SUFFICIENCY.

   *Deficiencies in an indictment such as insufficient statement of
   facts of the crime, uncertain or vague statement of the crime,
   barring of prosecution by the statute of limitations, and legal
   impossibility, do not destroy the indictment for purposes of
   charging a crime for extradition.*

7. EXTRADITION—INDICTMENT—SUFFICIENCY.

   *The standard for an indictment upon which extradition is sought
   is that it substantially charge a crime, however inartificially; a
   bad indictment, which might be quashed at trial, will support
   extradition.*

8. EXTRADITION—INDICTMENT—SUFFICIENCY.

   *Requiring more than a surface examination of an indictment in
   an extradition proceeding is objectionable because: (1) the asy-
   lum state would be required to deal with law and criminal
   procedure of the demanding state, inevitably resulting in error;
   (2) extradition is of utmost importance to enforcement of crimi-
   nal laws, requiring a high degree of respect and cooperation
   among states, which should not be endangered by looking past
   a governor's authentication; and (3) while a state's citizens
   should be protected from illegal action, extradition should not
   be so narrowly construed that offenders find permanent asylum
   in another state.*

9. EXTRADITION—INDICTMENT—HABEAS CORPUS—FORGERY.

   *A plaintiff who alleges that indictments issued against him in the
   demanding state are forgeries has not so distinguished his
   challenge to an extradition based on those indictments from
   traditional case law as to warrant an exception to the long-
   standing rule that the court in a habeas corpus proceeding may
   not look behind the face of an indictment; the hearing on the
   valid issuance of the indictment should be held in the demand-
   ing state.*

OPINION FOR REVERSAL

T. G. KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ.

10. EXTRADITION—HABEAS CORPUS—INDICTMENT—FORGERY.

    *The court in a habeas corpus proceeding erred in not allowing*

petitioner, who was sought to be extradited, to bring in testimony and proofs which, he alleged, showed the indictments upon which extradition was sought to be forgeries; if the indictments on record are indeed forgeries with respect to the petitioner, there can be no lawful extradition upon them.

11. EXTRADITION—HABEAS CORPUS—INDICTMENT—AUTHENTICATION—PROOFS—FORGERY.

*The authentication of indictments by the governor of the demanding state is not controlling proof of the authenticity of the indictments and a petitioner in habeas corpus proceedings may properly introduce proofs tending to dispute the claim of authenticity by showing the indictments to be forgeries.*

12. EXTRADITION—WARRANT—HABEAS CORPUS.

*Traditionally, upon the issuance of a warrant for extradition by the governor of the asylum state the accused may test the validity of his arrest in the asylum state in habeas corpus proceedings and the issues before the habeas court are: (1) whether the petitioner is the person named in the extradition papers, (2) whether the petitioner is a fugitive, (3) whether the extradition papers are in proper form on their face, and (4) whether the petitioner is substantially charged with a treason, felony or other crime.*

13. EXTRADITION—INDICTMENT—SUFFICIENCY—QUESTION OF LAW.

*To justify extradition, it must appear that the person demanded is substantially charged with a crime against the laws of the demanding state by an indictment or an affidavit, certified as authentic by the governor of the state making the demand; this prerequisite is a question of law, and is always open upon the face of the papers to judicial inquiry, on an application for discharge under a writ of habeas corpus.*

14. EXTRADITION—CONSTITUTIONAL LAW—"CHARGED".

*The word "charged" in the extradition clause of the Federal Constitution was used in its broad signification to cover any proceeding which a state might see fit to adopt by which a formal accusation is made against an alleged criminal (US Const, art IV, § 2).*

15. EXTRADITION—INDICTMENT—SUFFICIENCY—SUBSTANTIALITY.

*Reliance on the general rule in habeas corpus proceedings of liberal construction of an indictment in examining the substantiality of a charge on which extradition is sought would be*

*misplaced where the questions are whether the petitioner is charged with crime at all and whether the courts of the demanding state have jurisdiction.*

16. EXTRADITION—INDICTMENT—FORGERY.

*A forged indictment charges no offense, provides no jurisdiction, and does not provide grounds for extradition.*

17. EXTRADITION—INDICTMENT—SUFFICIENCY.

*Before the asylum state can lawfully comply with an extradition demand, the accused must be substantially charged with a crime.*

18. EXTRADITION—INDICTMENT—SUFFICIENCY.

*An indictment which charges no offense against the law, therefore providing no jurisdiction to the demanding state's courts, does not provide justification for extradition.*

19. EXTRADITION—INDICTMENT—SUFFICIENCY.

*Objections to the charging indictment which go beyond destroying the sufficiency of the indictment as a criminal pleading can destroy its sufficiency as a substantial charge of crime in an extradition proceeding.*

20. EXTRADITION—INDICTMENT—SUFFICIENCY.

*Extradition documents prepared in plain contravention of law are insufficient as a substantial charge of crime.*

21. EXTRADITION—INDICTMENT—SUFFICIENCY—FORGERY.

*Allegations of forgery of an indictment and the non-existence of a properly returned indictment in an extradition proceeding involve a mixed question of law and fact which is unanswerable on the face of the documents alone.*

22. EXTRADITION—INDICTMENT—HABEAS CORPUS—EVIDENCE.

*A petitioner for habeas corpus must present clear and convincing evidence supporting his claim of non-indictment in order to resist extradition successfully.*

23. EXTRADITION—HABEAS CORPUS—INDICTMENT—EVIDENCE.

*An accused in habeas corpus proceedings on extradition who attacks the substantiality of an indictment against him through a claim which calls into question the existence of any charge whatsoever and the jurisdiction of the courts of the demanding state may submit evidence beyond the face of the documents relevant to proving factual questions underlying the claim; in receiving evidence on such a claim from the parties, the court*

*must determine that the evidence supporting the accused is clear and convincing in order to justify issuance of a writ of habeas corpus.*

*Fieger, Golden & Cousens* for plaintiff.

*William L. Cahalan,* Prosecuting Attorney, and *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, for defendants.

M. S. COLEMAN, J. *(to affirm).* The central concern of this case is a legal argument towards change in the law of extradition by our Court. However, a full understanding of the facts is crucial and pointedly illustrates the fallacy of that argument.

In 1961 plaintiff and four other persons were indicted for kidnapping in North Carolina by the Union County Grand Jury. In 1964 the four co-indictees were tried on the 1961 indictments and found guilty. However, plaintiff was not tried with the co-indictees, having been a fugitive from North Carolina at the time. On January 29, 1965 the North Carolina Supreme Court quashed the 1961 indictments upon which the verdicts and judgments were based.[1] In May 1965, indictments were again issued against plaintiff and the four previously convicted persons. Plaintiff disputes validity of the 1965 indictments.

Plaintiff's location in 1965 and thereafter is not a matter of record. But in 1967 plaintiff was apparently residing in Peking, China. While in China, he wrote letters to the Clerk of the Union County Superior Court and the Solicitor of the Thirteenth Solicitorial District of North Carolina

---

[1] The North Carolina Supreme Court found racial discrimination in selection of the grand jury. *State v Lowry,* 263 NC 536; 139 SE2d 870 (1965).

regarding charges which might be pending against him.

In a letter dated August 3, 1967, the Clerk of the Superior Court responded:

"I enclose Xerox copies of the bills of indictments pending in the Superior Court of Union County against you. This office does not have authority to fix bail."[2]

At the habeas corpus hearing, plaintiff also introduced copies of the 1961 indictments which were claimed to have been attached to the letter. The 1961 indictments against plaintiff's alleged accomplices were quashed by the North Carolina Supreme Court.[3] Plaintiff claims his 1961 indictment is also invalid for the same reasons.

In a letter dated December 11, 1967, the Solicitor of the Thirteenth District responded to plaintiff:

"I have your letter of December 2nd, 1967, in reference to cases pending against you in the Superior Court of Union County, Monroe, North Carolina.

"In response to your letter, I wish to advise that you are charged with violating North Carolina General Statute 14–39 entitled, 'Kidnapping' in two cases which are alleged to have occurred on or about August 28, 1961 in Union County, North Carolina. I am informed the Clerk of the Superior Court in Union County has heretofore sent you copies of the Bills of Indictment in these two cases. I know of no other statutes you are charged with violating and so far as I know, no additional warrants have been issued against you since the original bills were returned by the Grand Jury in August, 1961. So far as I know, no appearance bond has been fixed by the court in the aforesaid cases, and this would be a matter for you to arrange with the presiding

[2] *Williams v Wayne County Sheriff*, HC No 19246, at p 7 (Wayne Circuit Court, Sept 13, 1972).

[3] *State v Lowry, supra.*

judge, Honorable John D. McConnell, Southern Pines, N.C."[4]

Plaintiff claims the letters show that no charges were pending against him in 1967. He argues that the 1961 indictments are invalid as a result of *State v Lowry,* 263 NC 536; 139 SE2d 870 (1965), and that the 1965 indictments are forgeries.

Action bringing the instant case to Michigan began on October 9, 1969 when the Governor of North Carolina executed a Governor's Requisition requesting rendition of plaintiff. The requisition was based on the 1965 indictments against plaintiff, as verified by the Solicitor of the Thirteenth District and certified by the Clerk of the Superior Court. On November 12, 1969, Governor William Milliken issued a Governor's Warrant for extradition of plaintiff. After unsuccessfully challenging the extradition proceedings,[5] plaintiff was arraigned on the Governor's Warrant on October 29, 1971. Plaintiff then pursued his habeas corpus remedy, beginning in 1971 and continuing until the Court's opinion today.

Circuit Judge Thomas Roumell, in the habeas corpus proceedings, succinctly summarized plaintiff's theory of the case:

"His theory of the case is that, although he was not a defendant in the 1964 trials, and not a party to the North Carolina Supreme Court's decision that, nevertheless, that decision, quashing the indictments on the basis of the invalidity of the Grand Jury proceedings, was effective to quash the 1961 indictments against him; that, whatever proceedings were later instituted in the Grand Jury as against the other defendants named in the 1961 indictments, that he was never re-indicted;

[4] *Williams v Wayne County Sheriff, supra,* at p 8.

[5] *Williams v North Carolina,* 33 Mich App 119; 189 NW2d 858, *leave to appeal denied,* 386 Mich 753 (1971).

and that the 1965 indictments purporting to name him as a defendant, are forgeries."[6]

Judge Roumell appropriately stated the issue presented to the Court:

"Petitioner has offered, and requested the opportunity to prove, by way of affidavits and depositions from witnesses who testified before the Grand Jury, lawyers who represented the several other witnesses named in the purported 1965 indictments, the Grand Jurors themselves, and other *[sic]* that, in fact, no indictments were ever found against him subsequent to 1961. The question to be decided here is whether he should be permitted to attempt such proofs."[7]

Plaintiff urges that since the 1965 indictments against him are forgeries, he is not charged with a crime and cannot be extradited. He requests opportunity to prove the forgery in the habeas corpus hearing.

## The Scope of a Habeas Corpus Challenge of Extradition

The issue presented to this Court arises directly from several constitutional and statutory provisions. US Const, art IV, § 2 provides in pertinent part:

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be

---

[6] *Williams v Wayne County Sheriff, supra,* at pp 9–10.
[7] *Id.*

delivered up, to be removed to the State having Juris-
diction of the Crime."

18 USC 3182 provides in pertinent part:

"Whenever the executive authority of any State * * *
demands any person as a fugitive from justice, of the
executive authority of any State * * * to which such
person has fled, and produces a copy of an indictment
* * * charging the person demanded with having com-
mitted * * * crime, certified as authentic by the gover-
nor * * * of the State, from whence the person as
charged has fled, the executive authority of the State
* * * to which such person has fled shall cause him to
be arrested and secured * * * ."

Thus, the governor of the asylum state has the
duty to extradite a fugitive when the governor of
the demanding state produces an indictment
charging crime, certified as authentic.

Both North Carolina and Michigan have adopted
the Uniform Criminal Extradition Act.[8] MCLA
780.2; MSA 28.1285(2) is the most important sec-
tion relating to the instant case and provides:

"*Subject to* the provisions of this act, the provisions of
the constitution of the United States controlling, and
any and *all acts of congress* enacted in pursuance
thereof, it is the duty of the governor of this state to
have arrested and delivered up to the executive author-
ity of any other state of the United States any person
charged in that state with treason, felony, or other
crime, who has fled from justice and is found in this
state." (Emphasis added.)

The Uniform Criminal Extradition Act recognizes
that Federal law is controlling on the subject of
extradition. The act is expressly subject to all acts
of Congress. While the act aids states in providing

[8] MCLA 780.1 *et seq.;* MSA 28.1285(1) *et seq.*

specific procedures to be followed by state officials,[9] ultimately we must look to Federal constitutional and statutory provisions, as interpreted by the United States Supreme Court. Our immediate concern is the scope of a habeas corpus hearing challenging an indictment used for extradition on the basis that it does not charge a crime.

In *Pierce v Creecy*,[10] the United States Supreme Court examined a challenge to extradition. Plaintiff claimed that the indictment from the demanding state was defective and, therefore, did not charge a crime as required by the United States Constitution. The indictment was claimed defective on several grounds: (1) the crime of false swearing was not adequately stated since opinion, not fact, was involved; (2) the indictment did not contain sufficient facts showing false swearing; (3) the indicted charge was not stated with certainty; (4) the statute of limitations barred prosecution; (5) the indictment was found in bad faith; and (6) the indictment charged the wrong crime under the demanding state's law.

The Court declined to examine whether there was good faith in finding the indictment. It also refused to determine whether the indictment charged the wrong crime since that was a mixed question of law and fact. More significantly, the Court did not dissect the indictment regarding the other four alleged defects. While admitting that

---

[9] *See, e.g.,* MCLA 780.3; MSA 28.1285(3).

The requirements of § 780.3 were followed by the North Carolina officials:

1. The Governor of North Carolina sent a requisition under state seal to Michigan, certifying as authentic the solicitor's application for requisition and the indictment;

2. The North Carolina solicitor prepared an application for requisition, fulfilling the requirements of § 780.3(2);

3. The Clerk of the Superior Court of Union County, North Carolina, certified the indictments and the application for requisition.

[10] 210 US 387; 28 S Ct 714; 52 L Ed 1113 (1908).

the defects would show the indictment to be bad and appropriate for a motion to quash, the Court upheld the indictment as a basis for extradition: "[T]he Constitution does not require, as an indispensable prerequisite to interstate extradition, that there should be a good indictment".[11] Even if the defects were admitted, the Court held that extradition is possible where the indictment charges the elements of a crime:

"The only safe rule is to abandon entirely the standard to which the indictment must conform, judged as a criminal pleading, and consider only whether it shows satisfactorily that the fugitive has been in fact, however inartificially, charged with crime in the state from which he has fled."[12]

The Court explained the policy reasons for such a rule:

"This Court * * * has said * * * that the indictment, in order to constitute a sufficient charge of crime to warrant interstate extradition, need show no more than that the accused was *substantially charged* with crime. This indictment meets and surpasses that standard, and is enough. If more were required it would impose upon courts, in the trial of writs of *habeas corpus,* the duty of a critical examination of the laws of States with whose jurisprudence and criminal procedure they can have only a general acquaintance. Such a duty would be an intolerable burden, certain to lead to errors in decision, irritable to the just pride of the States, and fruitful of miscarriages of justice."[13]

---

[11] *Id* at 403; 28 S Ct at 719; 52 L Ed at 1121.

[12] *Id* at 402; 28 S Ct at 718; 52 L Ed at 1120–1121.

[13] *Id* at 404–405; 28 S Ct at 720; 52 L Ed at 1122 (emphasis added). The Court, in *Appleyard v Massachusetts,* 203 US 222; 27 S Ct 122; 51 L Ed 161 (1906), also recognized the reasons for extradition, examining both state and individual interests:

"The constitutional provision relating to fugitives from justice, as

In *Roberts v Reilly*,[14] the Court discussed the
two-part inquiry involved in an extradition pro-
ceeding. The governor of the asylum state must
discern whether: (1) "[T]he person demanded is
substantially charged with a crime against the
laws of the State from whose justice he is alleged
to have fled, by an indictment or an affidavit,
certified as authentic by the governor of the State
making the demand"; [15] and (2) "the person de-
manded is a fugitive from the justice of the State
the executive authority of which makes the de-
mand".[16] The latter is a question of fact for deci-
sion by the governor. His decision on fugitivity
creates a presumption which may be overturned
by contrary proof in habeas corpus proceedings.[17]

However, whether the fugitive is substantially
charged with a crime by the indictment is a ques-
tion of law which "is always open upon the face of
the papers to judicial inquiry, on an application
for a discharge under a writ of *habeas corpus*".[18]
The Court rejected plaintiff's claim that the indict-
ment did not charge the crime of larceny. Plain-

___

the history of its adoption will show, is in the nature of a treaty
stipulation entered into for the purpose of securing a prompt and
efficient administration of the criminal laws of the several States—an
object of the first concern to the people of the entire country, and
which each State is bound, in fidelity to the Constitution, to recognize.
A faithful, vigorous enforcement of that stipulation is vital to the
harmony and welfare of the States. And while a State should take
care, within the limits of the law, that the rights of its people are
protected against illegal action, the judicial authorities of the Union
should equally take care that the provisions of the Constitution be not
so narrowly interpreted as to enable offenders against the laws of a
State to find a permanent asylum in the territory of another State."
*Id* at 227–228; 27 S Ct at 124; 51 L Ed at 163.

14 116 US 80; 6 S Ct 291; 29 L Ed 544 (1885).

15 *Id* at 95; 6 S Ct at 299; 29 L Ed at 549.

16 *Id. See Munsey v Clough,* 196 US 364; 25 S Ct 282; 49 L Ed 515
(1905).

17 *Munsey v Clough, supra. Ex Parte Reggel,* 114 US 642; 5 S Ct
1148; 29 L Ed 250 (1885).

18 *Roberts v Reilly, supra.*

tiff's objection was "that it does not appear that
the Bethlehem Iron Company, averred to be the
owner of the property the subject of the larceny
charged, is a person capable in law of such owner-
ship".[19] The Court held that plaintiff's objection
was not a matter of law on the face of the indict-
ment—the question should be argued and devel-
oped at trial in the demanding state.[20]

In *Pearce v Texas*,[21] the Court rejected plaintiff's
challenge of the indictment supporting extradition.
The claimed deficiency was failure to state time
and place of the crime, and barring by the statute
of limitations. The Court held that the indictments
were in substantial conformity with the demand-
ing state's law and "their sufficiency as a matter of
technical pleading would not be inquired into on
*habeas corpus*".[22]

[19] *Id* at 96; 6 S Ct at 300; 29 L Ed at 549.

[20] Similarly, in *Hogan v O'Neill*, 255 US 52; 41 S Ct 222; 65 L Ed
497 (1921), the Court rejected plaintiff's claim that the indictment was
invalid for failure to state the place of the crime. The Court had only
to examine the face of the indictment, finding that law of the
demanding state did not require the place of crime to be stated. The
Court repeated the rule for examining sufficiency of the indictment:
"Were there any doubt of the sufficiency of the indictment, as a
pleading, it would not be open to inquiry on *habeas corpus.*" *Id* at 55;
41 S Ct at 223; 65 L Ed at 500.

[21] 155 US 311; 15 S Ct 116; 39 L Ed 164 (1894).

[22] *Id* at 313; 15 S Ct at 117; 39 L Ed at 167.

In affirming the judgment below, the Court quoted the state appel-
late court:

"[I]f it reasonably appears upon the trial of the *habeas corpus* that
the relator is charged by indictment in the demanding State, whether
the indictment be sufficient or not under the laws of that State, the
court trying the *habeas corpus* case will not discharge the relator
because of substantial defects in the indictment under the laws of the
demanding State. To require this would entail upon the court an
investigation of the sufficiency of the indictment in the demanding
State, when the true rule is that if it appears to the court that he is
charged by an indictment with an offense, all other prerequisites
being complied with, the applicant should be extradited."

In *Munsey v Clough, supra,* the Court was presented with another
habeas corpus challenge of an indictment-based extradition. The
Court again held that "sufficiency of the indictment, as a matter of

Michigan courts have had opportunity to comment on the scope of extradition challenge available in a habeas corpus court. The Michigan Supreme Court, in *In re Palmer,*[23] rejected plaintiff's habeas corpus challenge. Plaintiff contended that the indictment did not charge a crime. The Court held that a court may examine the indictment on its face in determining whether a crime is charged. However, "beyond this the court cannot go in determining the fact of the petitioner's guilt or innocence".[24]

In *Dragisick v Judge of Recorder's Court,*[25] plaintiff contended the indictment used for his extradition did not sufficiently specify details of the crime. The Court relied on *Pierce v Creecy, supra,* holding that "although a complaint may be bad as a pleading and would be so held upon a motion to quash or other direct proceeding attacking the same, still it may be sufficient to charge a person with a crime within the meaning of the Federal Constitution".[26]

The Court of Appeals found an indictment sufficient for extradition in *In re Rayborn.*[27] Plaintiff argued the indictment did not charge a crime

---

technical pleading, will not be inquired into on *habeas corpus". Id* at 373; 25 S Ct at 284; 49 L Ed at 517. But a further comment by the Court is interesting in connection with the instant case:

"[I]t will not be presumed that such an indictment is void under the laws of Massachusetts, and the question of procedure under the indictment is one for the courts of the State where it was found. The courts of that State would undoubtedly protect her in the enjoyment of all her constitutional rights. These are matters for the trial court of the demanding State, and are not to be inquired of on this writ. If it appears that the indictment substantially charges an offense for which the person may be returned to the State for trial, it is enough for this proceeding."

[23] 138 Mich 36; 100 NW 996 (1904).

[24] *Id* at 37; 100 NW at 997.

[25] 195 Mich 112; 161 NW 881 (1917).

[26] *Id* at 115; 161 NW at 882.

[27] 18 Mich App 468; 171 NW2d 460 (1969).

since the demanding state was a common-law state where it was not a crime to steal the property of one's wife. Plaintiff requested the habeas corpus court to go beyond the face of the indictment, make factual findings and hold that no crime was charged. The trial court granted the writ of habeas corpus, but the Court of Appeals reversed. The Court cited *Pierce v Creecy, supra,* and *Roberts v Reilly, supra,* holding that the indictment need only substantially charge a crime. The Court refused to look behind the indictment in determining whether a crime was charged.

Plaintiff in the instant case presents this Court with the sole issue of whether the indictments sought to be used as a basis for his extradition to North Carolina charge a crime as required by Federal statute.[28] On the face of the indictments, plaintiff is clearly charged with the crime of kidnapping two named persons, on a specified date and in a specified location. This would easily meet requirements for extradition, as discussed by United States Supreme Court and Michigan cases. However, plaintiff offers a new and creative method for finding that the indictments do not charge a crime for extradition purposes under 18 USC 3182. Plaintiff alleges that the indictments are forgeries. If they are forgeries, the indictments would presumably be invalid. While the discussed cases do not allow examination of an indictment beyond its face in determining whether a crime is charged for extradition, plaintiff contends that his situation is different enough to extend the scope of the habeas corpus inquiry. Plaintiff wants to introduce "affidavits and depositions" as proofs of forgery of the indictments.

---

[28] 18 USC 3182. We are not faced with the other issue which commonly arises in a challenge of extradition, *i.e.,* whether plaintiff is a fugitive from the demanding state.

The cases discussed above, concerned with the scope of habeas corpus challenging sufficiency of an indictment as a charge of crime, involved common fact situations. Deficiencies alleged were: (1) insufficient statement of facts of the crime (time, place, *etc.);* (2) uncertain or vague statement of the crime; (3) barring of prosecution by the statute of limitations; and (4) legal impossibility.[29] The Courts uniformly held that such defects do not destroy the indictment for the purposes of charging a crime for extradition. The enunciated standard is that the indictment *substantially charge a crime, however inartificially;* thus, a bad indictment *(i.e.,* one that might be quashed at trial) will support extradition. To meet this standard, the scope of the habeas corpus hearing is limited to the face of the indictment. Thus, it is a question of law, not fact, as seen without going behind the indictment.

Perhaps most important are the reasons for imposing such a narrow inquiry upon the court when examining an indictment for a charge of crime. Requiring more than a surface examination is objectionable because: (1) the asylum state would be required to deal with law and criminal procedure of the demanding state, inevitably resulting in error; (2) extradition is of utmost importance to enforcement of criminal laws, requiring a high degree of respect and cooperation among states which should not be endangered by looking past a governor's authentication; and (3) as the Court in *Appleyard v Massachusetts*[30] warned, while a state's citizens should be protected from illegal action, extradition should not be so narrowly construed that offenders find permanent asylum in another state.

[29] *See Roberts v Reilly,* 116 US 80; 6 S Ct 291; 29 L Ed 544 (1885); *In re Rayborn,* 18 Mich App 468; 171 NW2d 460 (1969).

[30] 203 US 222; 27 S Ct 122; 51 L Ed 161 (1906).

The question then becomes whether plaintiff's challenge to the indictment is different enough from the reported cases to warrant an exception to the "on the face" examination presently afforded in extradition. Admittedly, plaintiff's alleged defect in the indictments is different from those seen in the cited cases—forgery, rather than the other technical deficiencies mentioned. Plaintiff's proof of forgery appears to rest on: (1) the 1967 letters from Union County, North Carolina officials, said to prove that no indictment existed in 1967 despite North Carolina's insistence on the existence of 1965 indictments; (2) proposed testimony from grand jury witnesses, their attorneys and the grand jurors; and (3) the claim that another person's name was "X'ed" out on the indictment and plaintiff's name added by a different typewriter.

While forgery would appear to constitute a more substantial defect in the indictments than insufficient statement of facts, vagueness, statute of limitations or legal impossibility, the analysis is similar. If the Michigan circuit court were to open the habeas corpus hearing to proof of forgery in the instant case, the court would be dealing with North Carolina law and criminal procedure. Much of the evidence plaintiff proposes to offer to show forgery is based on the 1967 letters. He contends that the 1967 letters prove that no indictment existed in 1965. But this is a matter which uniquely involves North Carolina procedure. As Circuit Judge Thomas Roumell noted:

"It is Petitioner's contention that these letters tend to establish the fact that as of 1967 no further indictments had been issued. The court, being unfamiliar with the legal parlance of the State of North Carolina is, of course, in no position to know whether Solicitor Boyette's statement that 'no additional warrants have been

issued,' can reasonably be construed to be an all inclu-
sive reference to any legal process which may have
issued in connection with the originally charged offense
(whether, for example, it is customary to refer to a
*Capias Instanter* as a 'warrant,') or, independent of
matters of legal phraseology, whether 'additional war-
rants' would refer to other offenses.

"Similarly, the Court is hardly in a position at this
point to know whether Ms. Gordon's alleged transmittal
of the 1961 indictments, and alleged representations
that they were the only indictments then pending,
would have been merely a clerical error or would have
some greater significance as Petitioner contends. If
these documents indeed have the meaning which Pe-
titioner ascribes to them, they, of course, stand in direct
contradiction to the sworn and authenticated docu-
ments accompanying the 1969 requisition."[31]

A North Carolina judge is best able to interpret
the 1967 letters in relation to the 1961 and 1965
indictments. Criminal procedure is a beast that is
unique in each state, and it would be quite pre-
sumptuous to ask Michigan courts to rule on
procedures used in North Carolina. In fact, as the
Court in *Pierce* noted, requiring the habeas corpus
court to critically examine "laws of States with
whose jurisprudence and criminal procedure they
can have only a general acquaintance * * * would
be an intolerable burden, certain to lead to errors
in decision, irritable to the just pride of the States,
and fruitful of miscarriages of justice".[32]

North Carolina is clearly the most appropriate
forum to consider the forgery issue raised by plain-
tiff. Moreover, much if not all of the evidence will
involve North Carolina witnesses (supposedly
grand jury witnesses, grand jurors and attorneys).
While this Court must be sensitive to protecting

[31] *Williams v Wayne County Sheriff, supra,* at 8.
[32] 210 US at 405; 28 S Ct at 720; 52 L Ed at 1122.

its citizens from illegal action, extradition of offenders from an asylum state is not to be narrowly construed.[33] Mutual respect and cooperation among states is crucial in meeting the constitutional mandate of extradition.[34]

## CONCLUSION

Plaintiff has not so distinguished his habeas corpus challenge to an indictment-based extradition from traditional case law as to warrant an exception to a long-standing rule. The rule has long been that a habeas corpus court may not look behind the face of an indictment; it is a question of law, not fact. The indictment need only substantially charge a crime, and a bad indictment may support extradition. The hearing on the valid issuance of the indictment should be held in the demanding state.

Technical deficiencies in the indictment are not sufficient to interfere with the governor's constitutional duty to extradite. Plaintiff's allegation of forgery, involving questions of North Carolina law and procedure, is best examined by a North Carolina court. Witnesses to be called by plaintiff are in North Carolina. To depose all or most of them would not only be burdensome and costly to all parties, but would deprive the Michigan court of personal observation and possible inquiry so important to a sound decision. Also on the part of the

---

[33] *Appleyard v Massachusetts, supra.*

[34] It is, perhaps, tempting to listen to the argument that plaintiff should be allowed to attack the indictment in the asylum state since it may fall on a relatively minor point, saving him much cost, time and trouble. However, the many cases considering habeas corpus proceedings in extradition situations have not accepted this point. Minor defects in pleadings and statute of limitations defenses, which are likely to be successful in the demanding state, do not remove the state's constitutional requirement of extradition.

demanding state, records and witnesses would be available in North Carolina.

Perhaps we are expected to derive from this tortuous effort to remain in Michigan a conviction that our sister state will treat plaintiff unfairly or even dishonestly. To the contrary, we would expect a full and fair hearing on the validity of the indictment.

Mr. Williams is not charged with being a self-avowed and well-known revolutionary, which could be the basis of his concern. He is charged with the kidnapping of two people and we have every confidence that he will be afforded all of the protections available to any citizen in a court of law. Extradition assumes good faith of the demanding state, and it requires cooperation for harmonious relations among the states.[35]

Affirm.

FITZGERALD and LINDEMER, JJ., concurred with COLEMAN, J.

WILLIAMS, J. The permissible scope of inquiry in extradition habeas corpus proceedings is the subject presented to the Court in this appeal. Specifically, we are asked to decide whether the habeas court erred in not allowing appellant Robert F. Williams, the person sought to be extradited, to bring in testimony and proofs which, he alleged, show the pertinent indictments upon which extradition to North Carolina is sought to be forgeries.

In our opinion, the habeas court erred in excluding such proofs. If the 1965 indictments on record are indeed forgeries with respect to appellant Williams, there can be no lawful extradition upon the documents presented in this case. Accordingly, we

[35] *In re Ray,* 215 Mich 156; 183 NW 774 (1921).

vacate the Wayne Circuit Court order of December 8, 1972, denying the writ of habeas corpus, and we remand this case to that court for further habeas corpus proceedings in order to give appellant proper opportunity to present his proofs.

## I—FACTS

On October 9, 1969, the Governor of North Carolina executed a Governor's Requisition requesting of Michigan's Governor the extradition of appellant, Robert F. Williams. Attached to the requisition were 13 supporting documents, the most significant on appeal being two sets of grand jury indictments, each set charging appellant with two counts of kidnapping arising from the same incident.[1] The wording of both sets of indictments is virtually identical save that one set is dated "May Term 1965", the other "August Term 1961"; both sets are signed by "Boyette", "Solicitor".

Governor Milliken, after holding an informal hearing on November 12, 1969,[2] issued a Governor's Warrant for appellant's extradition.

At the arraignment on the warrant on November 16, 1969, appellant served an *ex parte* order prohibiting arraignment and, simultaneously, filed a declaratory judgment action seeking to show

[1] One indictment in each set charges the kidnapping of Bruce Stegall, the other indictment charges the kidnapping of his wife, Mabel Stegall. Both charges arise from the same incident involving events surrounding the August 27, 1961, "Freedom Marchers" picketing of the Monroe, North Carolina, courthouse square and subsequent civil disorders. *See State v Lowry,* 263 NC 536, 538; 139 SE2d 870, 872 (1965).

[2] The Governor's hearing appears to have followed investigation of this demand for appellant Williams by the Attorney General pursuant to MCLA 780.4; MSA 28.1285(4). As is common, no official record was kept of the Governor's hearing. Accordingly, there is no way of knowing whether any investigation or finding was made as to whether or not the 1965 indictments on this record are forgeries.

that this extradition was illegal. Appellant's de-
claratory judgment was dismissed on procedural
grounds after hearing by the trial court. The Court
of Appeals affirmed the procedural dismissal as
within the trial court's discretion, holding that
appellant's most appropriate judicial route in this
case was to raise the invalidity of the extradition
in habeas corpus proceedings. *Williams v North
Carolina,* 33 Mich App 119; 189 NW2d 858 (1971).
This Court denied leave to appeal. 386 Mich 753
(1971).

On October 29, 1971, appellant was again ar-
raigned. He immediately took the advice of the
Court of Appeals and sought habeas corpus relief
alleging *inter alia,* that the 1961 indictments are
*prima facie* invalid under *State v Lowry,* 263 NC
536; 139 SE2d 870 (1965),[3] and that the 1965
indictments are forgeries. Essentially, Williams
argues two things: (1) that he was not indicted in
1965, and (2) that his name "was added later" to
the 1965 indictments on this record after the
grand jury returned the indictments and after
"someone else's name was x'ed out * * * ".

During the course of the judicial process Wil-
liams has been allowed by the courts involved to
produce one piece of solid evidence supportive of
his forgery allegations. That evidence is a 1967
letter from Solicitor Boyette of Union County,
North Carolina, which was sent to appellant Wil-
liams in response to Williams' inquiry as to the
existence of outstanding indictments. Solicitor Boy-
ette, it should be recalled, is the very individual
whose name appears as signing the 1961 and 1965

---

[3] In *Lowry,* the North Carolina Supreme Court held that the same
1961 indictments which charge appellant in this case were "invalid"
*"prima facie"* due to the improper exclusion of Negroes from the
grand jury panel. *See* 263 NC 536, 543–548; 139 SE2d 870, 876–879
(1965).

indictments on this record; he is also the same
individual who signed the 1969 Application for
Requisition, relied upon for purposes of authenti-
cation by the Governor of North Carolina, which
accompanied the indictments on record to Michi-
gan. However, in his 1967 letter to Williams,
Boyette stated that "no additional warrants have
been issued against you since the original bills
were returned by the Grand Jury in August,
1961". The significance of this letter is clear. As
the habeas corpus court opined:

"If these documents[4] indeed have the meaning which
Petitioner ascribes to them, they, of course, stand in
direct contradiction to the sworn and authenticated
documents accompanying the 1969 requisition."

While this 1967 letter was "admitted" into evi-
dence,[5] appellant avers that it is but the tip of an
iceberg of facts conclusively proving forgery. It is
the rest of the iceberg, the bulk of the evidence
Williams has amassed, which has not been allowed
into evidence. This evidence is averred to include
affidavits and depositions from witnesses who testi-
fied before the grand jury in 1965, from lawyers
who represented the several other witnesses

---

[4] The plural reference to "documents" here includes reference to a
second letter offered in evidence by appellant. This second letter,
again in response to appellant's inquiry, was from Ethel M. Gordon,
Clerk of the Superior Court of Union County, North Carolina, who
enclosed Xerox copies "of the bills of indictment pending in the
Superior Court of Union County against you." This letter, dated
August 3, 1967, included, according to appellant's representations,
*only* copies of the 1961 indictments.

[5] Solicitor Boyette's 1967 letter and the Clerk of the Court's 1967
letter (see fn 4, *supra),* were admitted into evidence, over the prosecu-
tor's objection, as Petitioner's Exhibits #5 and #4 respectively. The
prosecutorial objection was that these letters went to the improper
subject of appellant's guilt or innocence. The habeas judge admitted
the letters "subject to your [the prosecutor's] objection", and though
he briefly discussed them in his opinion, he did not specifically rule on
their admissibility.

named in the purported 1965 indictments, from
the grand jurors themselves, and from others—all
to the alleged effect that the grand jury in Union
County, North Carolina never returned 1965 in-
dictments against Williams and that the presence
of his name on the 1965 indictments on record is
due to forgery.

Judge Roumell, presiding in the habeas corpus
proceedings, refused to admit any of these proofs
into evidence, concluding that "it would be * * *
improper to permit Petitioner herein to introduce
parol evidence of the underlying facts surrounding
the issuance, or non issuance of a properly authen-
ticated indictment in support of his claim that the
indictment was, in fact, never issued". Accord-
ingly, the petition for writ of habeas corpus was
denied on the ground that "the authentication of
the indictments by the executive authority of the
State of North Carolina must be deemed control-
ling under the circumstances * * * ".

The Court of Appeals dismissed appellant's sub-
sequent "Complaint for Writ of Habeas Corpus" in
an order of May 18, 1973. This Court granted
leave to appeal on November 29, 1973. 390 Mich
810 (1973).

## II—SCOPE OF EXTRADITION HABEAS CORPUS INQUIRY WHERE NO SERIOUS CHALLENGE TO SUBSTANTIALITY

Simply stated, the central issue on appeal as
framed by the parties and Judge Roumell's opin-
ion, is whether the authentication of the 1965
indictments by the Governor of the State of North
Carolina is to be deemed controlling proof of the
authenticity of the 1965 indictments, thus barring
any other proofs on point, or whether, on the other
hand, appellant may properly introduce proofs

tending to dispute such claim of authenticity by showing the controlling indictments to be forgeries.[6]

The applicable constitutional and statutory provisions authorizing extradition are undisputed,[7] and are set forth in the margin.

---

[6] There is no need to waste any more judicial time on the question of the sufficiency of the 1961 indictments as supportive of extradition nor does appellee make any argument to this effect. In *Lowry, supra,* the North Carolina Supreme Court declared the same 1961 indictments before us today *"prima facie"* "invalid". Judge Roumell in the habeas corpus proceedings in this case properly took judicial notice of *Lowry.* Williams was not party to the case in *Lowry.* However, exactly the same indictments are involved—with the same *"prima facie"* problems in grand jury composition. The 1961 indictments, being invalid *on their face,* cannot by themselves support extradition.

[7] United States Constitution, Art IV, § 2, provides in relevant part:

"A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

18 USC 3182, provides in relevant part:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear."

Michigan has adopted the Uniform Criminal Extradition Act at MCLA 780.1, *et seq.;* MSA 28.1285(1), *et seq.* (as has North Carolina). MCLA 780.2; MSA 28.1285(2) provides:

"Fugitives from justice; duty of governor. Subject to the provisions of this act, the provisions of the constitution of the United States controlling, and any and all acts of congress enacted in pursuance thereof, it is the duty of the governor of this state to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony, or other crime, who has fled from justice and is found in this state."

MCLA 780.19; MSA 28.1285(19) provides:

"Guilt or innocence of the accused, when inquired into. The guilt or innocence of the accused as to the crime of which he is charged may

However, other than barring inquiry into issues involving the guilt or innocence of the accused, the statutes on point do not directly speak to the question of the scope of the habeas corpus inquiry or the evidentiary method of determining the issue of authenticity of an indictment supporting a demand for extradition.

Traditionally, upon the issuance of a warrant by the governor of the "asylum state," the accused may test the validity of his arrest in the asylum state in habeas corpus proceedings. The issues before the habeas court are: (1) whether the petitioner is the person named in the extradition papers, (2) whether the petitioner is a fugitive, (3) whether the extradition papers are in proper form on their face, and (4) whether the petitioner is substantially charged with a "treason, felony or other crime". *In re Rayborn,* 18 Mich App 468; 171 NW2d 460 (1969), *In re Palmer,* 138 Mich 36; 100 NW 996 (1904).

The last mentioned issue is that which petitioner has asked this Court to consider. To justify extradition, it must appear that the person demanded is substantially charged with a crime against the laws of the demanding state by an indictment or an affidavit, certified as authentic by the governor of the state making the demand. *Ex parte Reggel,* 114 US 642; 5 S Ct 1148; 29 L Ed 250 (1885); *Roberts v Reilly,* 116 US 80; 6 S Ct 291; 29 L Ed 544 (1885). It has been said that this prerequisite "is a question of law, and is always open upon the face of the papers to judicial inquiry, on an application for a discharge under a writ of

---

not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."

*habeas corpus". Roberts v Reilly,* 116 US 95; 6 S Ct 299–300; 29 L Ed 549.

There has been no case, to our knowledge, raising the precise question we are faced with today. This is not surprising, for petitioner's claim is extraordinary in that it relates not so much to the substantiality of the charge, but rather to whether petitioner has been accused of any crime at all. The distinction here is critical in the determination of this case.

Habeas courts, in examining the *substantiality* of a charge, have granted great deference to the demanding state,[8] manifest in part by the usual limitation of the inquiry to the face of the supporting documents. *Biddinger v Commissioner,* 245 US 128, 135; 38 S Ct 41; 62 L Ed 193 (1917); *Smith v State of Idaho,* 373 F2d 149 (CA 9, 1967).

The fundamental reasons for such deference were well expressed by the United States Supreme Court in *Biddinger, supra:*

---

[8] Thus, the findings of the asylum state's governor that the papers are in order and the charge is sufficient is given a presumption of regularity. *Compton v Alabama,* 214 US 1; 29 S Ct 605; 53 L Ed 885 (1909). An indictment or affidavit need not meet the technical requirements of criminal pleadings in order to meet the test of sufficiency. *Pierce v Creecy,* 210 US 387; 28 S Ct 714; 52 L Ed 1113 (1908); *Dragisick v Judge of Recorder's Court,* 195 Mich 112; 161 NW 881 (1917); *Munsey v Clough,* 196 US 364; 25 S Ct 282; 49 L Ed 515 (1905). Constitutional claims asserted by the petitioner generally should not be examined by the habeas court in the asylum state unless there is a danger of prospective irreparable injury to petitioner upon release to the demanding state or unless the demanding state cannot supply a remedy. See discussion in 74 Yale LJ 78 (1964); 21 Chi L Rev 735 (1954). Factual errors in the extradition papers regarding the time of the crime charged have been overlooked. *Pearce v Texas,* 155 US 311; 15 S Ct 116; 39 L Ed 164 (1894); *In re Palmer,* 138 Mich 36; 100 NW 996 (1904). A showing that the statute of limitations of the demanding state bans prosecution for the crime charged has not prevented extradition. *Biddinger v Commissioner,* 245 US 128; 38 S Ct 41; 62 L Ed 193 (1917). As a general rule, the constitutional and statutory provisions applicable to extradition have been construed liberally in favor of the demanding state. *Biddinger, supra; Compton v Alabama, supra; In the Matter of Strauss,* 197 US 324; 25 S Ct 535; 49 L Ed 774 (1905); *Appleyard v Massachusetts,* 203 US 222; 27 S Ct 122; 51 L Ed 161 (1906).

"The provision of the Federal Constitution quoted, with the change of only two words, first appears in the Articles of Confederation of 1781, where it was used to describe and to continue in effect the practice of the New England Colonies with respect to the extradition of criminals. *Kentucky v Dennison,* 24 How 66 [65 US 66; 16 L Ed 717 (1860)]. The language was not used to express the law of extradition as usually prevailing among independent nations but to provide a summary executive proceeding by the use of which the closely associated States of the Union could promptly aid one another in bringing to trial persons accused of crime by preventing their finding in one State an asylum against the processes of justice of another. *Lascelles v Georgia,* 148 US 537 [13 S Ct 687; 37 L Ed 549 (1893)]. Such a provision was necessary to prevent the very general requirement of the state constitutions that persons accused of crime shall be tried in the county or district in which the crime shall have been committed from becoming a shield for the guilty rather than a defense for the innocent, which it was intended to be. Its design was and is, in effect, to eliminate, for this purpose, the boundaries of States, so that each may reach out and bring to speedy trial offenders against its laws from any part of the land.

"Such being the origin and purpose of these provisions of the Constitution and statutes, they have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose. * * * ." 245 US 132–133.

This general rule of liberal construction has been applied so as to ensure that a habeas court does not provide someone who has been accused of crime an asylum by characterizing that charge as insubstantial because of mere technical deficiencies, or by interfering in matters more properly before the trial court in the demanding state. Thus, for example, the United States Supreme Court in *In the Matter of Strauss,* 197 US 324; 25 S Ct 535; 49 L Ed 774 (1905), tells us that "the

word 'charged' [in the extradition clause of the Constitution] was used in its broad signification to cover any proceeding which a State might see fit to adopt by which a formal accusation was made against an alleged criminal".

### III—SCOPE OF INQUIRY WHERE SERIOUS CHALLENGE TO SUBSTANTIALITY

But reliance on this general rule of construction and the general rule of narrow-scope inquiry would be misplaced where questions are posed as to whether the petitioner is charged with crime at all and whether the courts of the "demanding" state have any jurisdiction authorizing the exercise of their power over petitioner. This is exactly what this case is all about.

Several United States Supreme Court decisions clearly indicate that petitioner poses a serious challenge to the substantiality of the charge of crime, which if resolved in petitioner's favor, would justify the issuance of a writ of habeas corpus. As noted above, to justify extradition it must appear that the person demanded is substantially charged with a crime against the laws of the demanding state. *Ex parte Reggel, supra; Roberts v Reilly, supra.*

In *Greene v Henkel,* 183 US 249; 22 S Ct 218; 46 L Ed 177 (1902), the Supreme Court specifically stated that an indictment which charged no offense, and which therefore provided no jurisdiction to the demanding court, would not provide grounds for removal:[9]

---

[9] While *Greene* is a removal case, not an extradition case, note that *Hale v Crawford,* 65 F2d 739 (CA 1, 1933), *cert den* 290 US 674; 54 S Ct 92; 78 L Ed 581 (1933) specifically found the reasoning of *Greene* applicable to extradition cases.

*"We do not, however, hold that when an indictment charges no offense against the laws of the United States,* and the evidence given fails to show any, or if it appears that the offense charged was not committed or triable in the district to which removal is sought, *the court would be justified in ordering removal,* and thus subjecting the defendant to the necessity of making such a defense in the court where the indictment was found. In that case there would be no jurisdiction to commit nor any to order the removal of the prisoner." (Emphasis added.) 183 US 261; 22 S Ct 223; 46 L Ed 189.

Obviously, a forged indictment would similarly charge no offense, would provide no jurisdiction, and would not provide grounds for extradition.[10]

In *Pierce v Creecy,* 210 US 387; 28 S Ct 714; 52 L Ed 1113 (1908), the Supreme Court, faced with a number of technical and procedural challenges to the charge, held that claims which merely went to the sufficiency of the indictment as a criminal pleading would not justify the issuance of a writ of habeas corpus. 210 US 387, 401–402. See also, in accord, *Dragisick v Judge of Recorder's Court,* 195 Mich 112; 161 NW 881 (1917). However, the *Pierce* Court noted significantly that "it is obvious that an objection which, if well founded, would destroy the sufficiency of the indictment, as a criminal pleading, might conceivably go far enough to destroy also its sufficiency as a charge of crime". 210 US 387, 404; 28 S Ct 714, 719; 52 L Ed 1113, 1121.

---

[10] In *Rodman v Pothier,* 264 US 399; 44 S Ct 360; 68 L Ed 759 (1924), another habeas case arising out of removal proceedings, the United States Supreme Court did hold that a jurisdictional question should be determined by the court where the indictment was found. But *Rodman* presented a situation wholly different than the instant case. In *Rodman,* petitioner did not challenge the fact that he had been indicted for murder, and the jurisdictional question was whether the United States, as a nation, had exclusive jurisdiction over the place of the alleged crime at the time the alleged crime was committed.

In *Compton v Alabama,* 214 US 1; 29 S Ct 605; 53 L Ed 885 (1909), the accused challenged the supporting documents on the grounds that the charging affidavit was made before a notary public rather than a magistrate. The Court in *Compton* ruled against the accused, holding that because in the demanding state a notary public performed substantially the same office as a magistrate, the document's insufficiency on this basis would not support the issuance of a writ of habeas corpus as it was not "clear that what was done was in plain contravention of law". 214 US 1, 8; 29 S Ct 605, 607; 53 L Ed 885, 887.

These Supreme Court cases read together make it clear that petitioner presents a claim which, if resolved in his favor, would mean he should not be extradited. Under these cases the following rules are set forth:

(1) The *accused must be substantially charged* before the asylum state can lawfully comply with an extradition demand.

(2) *An indictment which constitutes no offense against the law,* therefore providing no jurisdiction to the demand state's courts, *does not provide justification for extradition.*

(3) *Objections to the charging indictment which go beyond destroying the sufficiency of the indictment* as a *criminal pleading can destroy its sufficiency as a substantial charge of crime.*

(4) *Extradition documents prepared "in plain contravention of law" are insufficient as a substantial charge of crime.*

If the submitted 1965 indictments are forgeries or were not returned by the grand jury, petitioner would be clearly entitled to resist extradition under the authority of these rules:

(1) The accused would not be substantially charged, for he was not charged at all.

(2) A forged indictment would constitute no offense, and would not provide a basis for extradition.

(3) The habeas objections would go far enough to destroy the sufficiency of the indictments as a substantial charge of crime.

(4) The extradition documents would be lacking an authentic charging document, in plain contravention of law. MCLA 780.3; MSA 28.1285(3).

As noted above, in extradition cases where there is no serious challenge to the substantiality of the crime, the inquiry by the habeas court is generally limited to the face of the documents. But in the instant case, we are required to go beyond the face of the documents because here there *is* a serious challenge to the requirement of a charge of crime, and the only way that the habeas court can reasonably determine whether petitioner may lawfully be extradited is to go beyond the face of the documents in admitting evidence related to petitioner's claim.

Instances sometimes arise where the determination of the legal sufficiency of the charging documents requires a review of the underlying facts. Suppose, for example, in this case the North Carolina Governor's signature authenticating the documents was affixed one day after he left office though the documents were dated as of the time he was in office. The question of proper authentication would then be one of mixed law and fact. Yet the factual aspects, though bearing on the presence of a proper charge, would not be available on the face of the documents as the whole question *is* the legitimacy of the face of the documents. Likewise, allegations of forgery and the non-existence of properly returned charging indictments involve

a mixed question of law and fact which, like the Governor's signature hypothetical, is unanswerable on the face of the documents alone.

The sum of all this is that the habeas court needs evidence related to petitioner's claim in order to make a just determination of this case. Without such evidence, the risk is too grave that the habeas court, acting in self-imposed ignorance, might infringe in blind deference to another state on the rights of a citizen of the state which that court seeks to serve, compelling removal of the party from his or her home, to be brought to trial under the authority of a wholly void charge.

In the absence of controlling authority requiring us to do so, we are unwilling to put rights of one of our citizens in jeopardy where there may be no valid charge at all, particularly where the cost to the demanding state in allowing petitioner to present evidence pertinent to his claim is relatively minor.

In point of fact, other cases indicate that inquiry beyond the face of the documents is called for when the need for further evidence is compelling. The Michigan Supreme Court, in *In re Ray,* 215 Mich 156; 183 NW 774 (1921), was confronted with a claim by the accused that he faced the risk of lynching if extradited to the demanding state. This Court, although ultimately ruling against the accused's right to resist extradition, spoke with evident approval of the fact that "plaintiff's counsel were given a free hand in making their record," even being allowed to go so far as to introduce "hearsay and other incompetent testimony". 215 Mich 156, 160; 183 NW 774, 776.

The Court in *Ray* found reason to accept a broader inquiry than is usual because of the danger of irreparable injury to petitioner if a full

hearing of the evidence was not allowed.[11] While the danger of irreparable injury is not alleged here, we do have an exceptional situation where petitioner is in danger of being extradited on what may be a forged indictment, a nullity under the law, unless the scope of the inquiry is broadened so as to allow the admission of evidence pertinent to petitioner's claim.

Of significance also is the fact that the "face of the documents" limitation has never been applied to factual evidence related to fugitivity. See *Biddinger v Commissioner,* 245 US 128, 135; 38 S Ct 41, 43; 62 L Ed 193, 199 (1917). A petitioner is allowed to submit evidence that he or she was not in the demanding state at the time the crime is alleged to have been committed. The fugitivity question, like the question before us today, is a mixed question of law and fact which, if resolved in petitioner's favor, wholly destroys the sufficiency of the charge. It is difficult to see why extrinsic evidence may be received on this issue, and not on the issue posed by petitioner in the instant case.

Finally, we look to the United States Court of Appeals in *Kirkland v Preston,* 128 US App DC 148; 385 F2d 670 (1967).[12] In *Kirkland,* the charge supporting extradition was made via affidavit, rather than by indictment. The Court of Appeals held that a requisition affidavit cannot constitutionally support a rendition arrest unless that

---

[11] See discussion of broad-scope inquiry in extradition proceedings where potential irreparable injury to petitioner is involved in Notes and Comments, *Extradition Habeas Corpus,* 74 Yale LJ 78 (1964); Comment, *The Limits of Constitutional Inquiry on Habeas Corpus in Interstate Rendition,* 21 U Chi L Rev 735 (1954).

[12] *See* discussion supporting *Kirkland* in *Interstate Rendition and the Fourth Amendment,* 24 Rutgers L Rev 551 (1970), and the cases cited therein. The holding of *Kirkland* has been accepted by several states.

affidavit sets out facts which justify a Fourth Amendment finding of probable cause.

The situation in *Kirkland* is substantially analogous to that in the instant case in that the claim of insubstantiality went to the jurisdiction of the demanding state to bring petitioner to trial in that state. The Court in such a situation demanded a fuller factual showing from the state, before finding that petitioner had been charged with crime. It would seem equally just to permit the individual sought to be extradited to bring factual evidence not on the face of the documents on the insubstantiality or invalidity of the charge. Moreover, the need of the habeas court to receive more factual evidence in order to reasonably make a judgment on the substantiality of the charge is no less in the instant case than in *Kirkland.*

In this regard, the Court in *Kirkland* states:

"The law appreciates the hardship which extradition can involve: not only the suspension of one's liberty but his deportation from the state in which he lives into another jurisdiction which may be hundreds of miles from his home. The law accordingly surrounds the accused with considerable procedural protection to stave off wrongful rendition. It is consistent with this concern for the accused's just treatment to recognize his right to require official confirmation of probable cause in the asylum state before extradition.

\*  \*  \*

"it would be highhanded to compel that jurisdiction [the asylum state] to lend its coercive authority, and the processes of its law, against even its own citizens in aid of an enterprise the key details of which remain in the dark. If, as here, it turns out that the prosecution against the fugitive is unfounded, the asylum state will have expended its resources and given the legitimizing stamp of its judiciary to a cause which is at best futile, at worst arbitrary. 385 F2d 670, 676–677."

We share with the Court in *Kirkland* its distaste for making a decision involving important rights of the individual where the key details remain in the dark.

One other United States Court of Appeals case, *Hale v Crawford,* 65 F2d 739 (CA 1, 1933), *cert den* 290 US 674; 54 S Ct 92; 78 L Ed 581 (1933), takes a more restrictive view regarding what evidence beyond the face of the documents is properly before a habeas court, but its conclusions are not inconsistent with our holding today. In *Hale,* petitioner challenged the substantiality of the charge in that the judge responsible for the selection and organization of the grand jury which brought the indictment against petitioner excluded blacks from the grand jury in contravention of the Constitution. The Court held that the district court had erred in admitting evidence in a habeas corpus proceeding which went to alleged discrimination in the selection of the grand jurors. In so holding, however, the Court emphasized the fact that the petitioner's claim did not go to the jurisdiction of the trial court in the demanding state, in that even if resolved in petitioner's favor, the indictment would not be rendered void, but only voidable.[13] Objection before the trial court would void the indictment, but if such be waived, or simply not be made at all, the indictment remains a sufficient foundation for the jurisdiction of the trial court. *Kaizo v Henry,* 211 US 146; 29 S Ct 41; 53 L Ed 125 (1908). Thus, for a habeas court to receive evidence on this issue would contravene the traditional ban against interfering in the proper functions of the trial court. The situation in

[13] Disqualification of grand jurors does not destroy the jurisdiction of the court in which an indictment is returned. *Ex parte Harding,* 120 US 782; 7 S Ct 780; 30 L Ed 824 (1887); *In re Wood,* 140 US 278; 11 S Ct 738; 35 L Ed 505 (1891).

*Hale,* therefore, is quite unlike that before the Court here, where both the jurisdiction of the trial court and the existence of any charge whatsoever have been called into question.

Thus, in sum, past precedent indicates that we are faced with a claim which, if resolved in petitioner's favor, would destroy the substantiality of the charge; that the "face of the documents" limitation has not been applied where a broader inquiry is necessary for a just and reasonable determination of the sufficiency of the extradition demand; and that specifically where challenge to the existence of a charge puts the jurisdiction of the demanding court in question, and the key details necessary to resolve the question are unknown, a broader inquiry by the habeas court into the facts is called for. In the light of this authority, we conclude that petitioner should be allowed to make his proofs before the habeas court.

## IV—BURDEN OF PROOF

Our determination that petitioner should be allowed to present evidence to the habeas court on the question of whether he was in fact indicted raises the question of what showing by petitioner is necessary in order to successfully resist extradition. The similarity between the question posed by petitioner and the fugitivity question has previously been noted. Courts have established varying burdens of proof on the accused, but the burden of overcoming the presumption of fugitivity arising from the executive warrant has invariably been heavy.[14] The Courts establishing the heavy burden

---

[14] *See, e.g., Ex parte Riccardi,* 68 Ariz 180; 203 P2d 627 (1949) (petitioner must support his claim of non-fugitivity by clear and convincing evidence or by evidence to convince beyond a reasonable doubt); *State ex rel Channell v Murphy,* 202 Md 650; 96 A2d 473, *cert*

have relied in part on the rationale that non-fugitivity is basically an alibi defense, and the habeas court is not the proper forum for determining guilt or innocence. *Hyatt v New York ex rel Corkran,* 188 US 691; 23 S Ct 456; 47 L Ed 657 (1903). While this consideration is not involved here, it seems evident that the purposes of the extradition clause of the United States Constitution and the applicable statutes demand that petitioner present clear and convincing evidence supporting his claim of non-indictment in order to successfully resist extradition.

## V—Conclusion

In sum, we hold that an accused in extradition habeas corpus proceedings who attacks the substantiality of an indictment against him or her through a claim which calls into question the existence of any charge whatsoever and the jurisdiction of the courts of the demanding state, may submit evidence beyond the face of the documents,

*den,* 346 US 824; 74 S Ct 40; 98 L Ed 349 (1953) (beyond a reasonable doubt); *People ex rel Higley v Millspaw,* 281 NY 441; 24 NE2d 117 (1939) (conclusively); *Commonwealth ex rel Dronsfield v Hohn,* 390 Pa 434; 135 A2d 757 (1957) (overwhelmingly). *United States ex rel Vitiello v Flood,* 374 F2d 554 (CA 2, 1967) summarizes thus:

"There is no merit to the petitioner's contention that the burden of proof placed upon him was too heavy. It was settled long ago that the burden of proving that the accused was not present in the demanding state at the time the crime was committed rests upon him and that, to meet it, he must conclusively establish his absence by clear and convincing proof. *South Carolina v Bailey, supra* [289 US 412, 421; 53 S Ct 667; 77 L Ed 1292 (1933)]; *Illinois ex rel McNichols v Pease,* 207 US 100, 112; 28 S Ct 58; 52 L Ed 121 (1907); *Munsey v Clough, supra* [196 US 364; 25 S Ct 282; 49 L Ed (1905)]. In the present case there was conflicting evidence, and so long as there was conflicting evidence, and so long as there was sufficient state's evidence to support the court's finding of probable cause its conclusions must stand and New York is obligated to surrender the petitioner to Florida for trial. *Hyatt v New York ex rel Corkran, supra* [188 US 691, 710–711; 23 S Ct 456; 47 L Ed 657 (1903)]; *Moncrief v Anderson, supra* [119 US App DC 323; 342 F2d 902, 904 (1964)]."

relevant to proving factual questions underlying the claim. In receiving evidence on such claim from the parties, the habeas court must determine that the evidence supporting the accused is clear and convincing in order to justify issuance of a writ of habeas corpus. In the instant case, accordingly, the Wayne Circuit Court erred in refusing to allow petitioner to produce testimony and other proofs in an effort to show that the 1965 indictments supporting the Governor of North Carolina's requisition request are forgeries.

The trial court order of December 8, 1972, denying a writ of habeas corpus is vacated. This cause is remanded to Wayne Circuit Court for further habeas corpus proceedings not inconsistent with this opinion.

T. G. KAVANAGH, C. J., and LEVIN, J., concurred with WILLIAMS, J.